K.P. and N.P., husband and wife, appeal from a judgment dismissing their medical malpractice action against Josiah F. Reed, M.D., and Montgomery Urology Associates for want of prosecution. We reverse and remand.
The complaint, filed on March 29, 1988, in the Montgomery County Circuit Court, named as defendants Josiah F. Reed, M.D., Montgomery Urology Associates, and entities no longer involved in this case. The complaint alleged that the defendants had negligently treated K.P. in connection with removal of "Pegronie's plaque" from his penis, and that the alleged negligence resulted in "a post-operative infection that progressed to gangrene infection, which resulted in the loss of his penis." N.P. sought damages for loss of consortium. Trial of the cause was scheduled to begin on February 3, 1992. *Page 1242 
On January 30, 1992, four days before trial, the plaintiffs' attorney, Mr. Frank Hanson, Jr., telephoned Mr. Thomas H. Keene, the defendants' attorney, and stated that because of the "sensitive nature" of K.P.'s injury and the "high profile nature of their business," the plaintiffs "had decided to dismiss" the case with prejudice in exchange for a signed release precluding a counterclaim by the defendants for malicious prosecution. The same day, after receiving approval of the terms from his clients, Mr. Keene, at Mr. Hanson's request, notified the trial court of the purported agreement. On the day the trial was set to begin, Mr. Keene, having obtained the signatures of his clients, sent to Mr. Hanson a release, plus a stipulation for dismissal, to be submitted to the plaintiffs for their signatures. The documents were never returned to Mr. Keene and were never submitted to the court; nevertheless, on April 13, 1992, the trial court entered a judgment dismissing the case with prejudice.
On April 30, 1992, the plaintiffs, represented by their present counsel, moved the trial court to set aside the judgment and to reinstate the case. In a memorandum opinion denying the plaintiffs' motion, the trial court set forth findings of fact on which it concluded that the plaintiffs' case was due to be dismissed for want of prosecution. On appeal the plaintiffs contend, in effect, that the trial court's conclusions of law do not follow from its findings of fact. We agree.
Dismissal of an action "for want of prosecution is a drastic sanction." Burdeshaw v. White, 585 So.2d 842, 847 (Ala. 1991). "Accordingly, this Court scrutinizes any order terminating an action for want of prosecution, and it does not hesitate to set one aside when an abuse of discretion is found." Id. The entry of a judgment of dismissal for want of prosecution in the absence of "a clear record of delay, willful default or contumacious conduct by the plaintiff" constitutes such an abuse. Selby v. Money, 403 So.2d 218 (Ala. 1981); see also Smithv. Wilcox County Bd. of Educ., 365 So.2d 659 (Ala. 1978).
Both plaintiffs filed affidavits in support of their motion to set aside the judgment. K.P.'s affidavit alleges as follows:
 "On the Wednesday before trial, I received a call from my attorney, who stated [that] our expert had withdrawn and would not testify.[1] I asked what could be done and was told we had no choice but to drop the case. My attorney stated [that] he would send me a document which I would have to sign along with Dr. Reed and then the case would be over. I was told [that] nothing would be final until the document was signed.
 "I was too stunned to say anything one way or the other. I said nothing. I never agreed to drop the case. I understood and believed that I had to sign the documents before the case would be over.
 "The following week, I received the release [that] my attorney wanted me to file. I have refused to sign the document. I have not gone through the time and trouble of pursuing the lawsuit just to dismiss the case without even going to trial. I have obtained other counsel, who have agreed to take my case to trial."
(Emphasis and footnote added.)
The trial court's findings fully corroborate these allegations. First, it found as a fact that Hanson "lacked express authority to dismiss the action." Second, it found that the plaintiffs had refused to execute the release and the stipulation of dismissal after being told by their attorney that the action would not be dismissed without their signatures. Third, the trial court found that the plaintiffs, after receiving the documents, "immediately sought out new counsel." (Emphasis added.)
These express findings effectively negate any inference of action or inaction attributable to the plaintiffs that would constitute "contumacious conduct" or such "willful default" as would amount to ratification of the agreement. See Selby v.Money, 403 So.2d 218 (Ala. 1981). In particular, an attorney in this state may not "compromise" his *Page 1243 
"client's cause of action" except on the "express authority of the client." National Bread Co. v. Bird, 226 Ala. 40,145 So. 462 (1933). Moreover, a client may reasonably and justifiably rely on the advice of his attorney. See Willis v. Maverick,760 S.W.2d 642 (Tex. 1988); Lietz v. Primock, 84 Ariz. 273,327 P.2d 288 (1958); In re Wilson, 81 N.J. 451, 409 A.2d 1153 (1979). Thus, having been told by Hanson that their signatures were prerequisites to the dismissal of the action, the plaintiffs were justified in expecting that their refusal to forward executed documents immediately would not become the basis of a dismissal for want of prosecution. Finally, the plaintiffs, in "immediately" acting to secure new counsel, dispelled any semblance of willful default or ratification of the settlement.McFry v. Stewart, 219 Ala. 216, 121 So. 517 (1929) (inaction is necessary for a finding of ratification).[2]
Applying these rules to the trial court's factual findings, we are compelled to conclude that the trial court abused its discretion in denying the plaintiffs' motion to set aside the judgment and to reinstate their action. Consequently, the judgment is reversed, and the cause is remanded for reinstatement.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, STEAGALL and INGRAM, JJ., concur.
[1] The plaintiffs had obtained the deposition testimony of Dr. Culley Carson, whom they identified to the court as an expert witness. In reality, therefore, the expert witness's alleged "withdrawal" was not fatal to the plaintiffs' case, but merely deprived the plaintiffs of the benefit of live testimony.
[2] Significantly, the trial court based its conclusions only on "the events immediately surrounding the dismissal of the action" (emphasis added). Thus, it did not fault the plaintiffs' prosecution of the action from the time of commencement of the suit until the purported settlement.