On June 14, 2000, Severiano Rios Benitez and seven other plaintiffs[1]
(hereinafter referred to collectively as "the plaintiffs") sued Jeffrey and Christie Beck ("the defendants"), and Freedom Financial Services, Inc. ("FFS") in the Marshall Circuit Court ("the trial court"), alleging fraud, conspiracy to defraud, and misrepresentation. On August 22, 2000, FFS was dismissed by the plaintiffs. On October 12, 2000, the trial court dismissed the case for a failure to prosecute the claim; the plaintiffs moved to have that order set aside, and the trial court granted that motion on November 3, 2000. On April 12, 2001, the trial court granted the defendants' motion to dismiss all of the plaintiffs except Severiano Rios Benitez and Manuella Rios Benitez; the plaintiffs filed a "motion to reconsider" that order. Following a change in legal counsel, the plaintiffs filed an amended complaint alleging additional facts and a fraudulent-suppression claim.
On August 2, 2002, the defendants moved to enforce a settlement agreement; the plaintiffs opposed that motion. On December 18, 2002, the trial court entered an order enforcing the settlement agreement. The plaintiffs filed a postjudgment motion, which the trial court denied. The plaintiffs timely appealed.
The trial court did not hold an ore tenus hearing. The following facts were taken from the parties' pleadings and their briefs on appeal.
The plaintiffs' complaint arose out of a purchase of real estate from the defendants. The plaintiffs hired Robert W. Hanson to serve as their attorney; the defendants were represented by Charles Hare. According to the briefs on appeal, Hanson and Hare engaged in a series of negotiations in an attempt to settle this action. On January 2, 2002, Hanson sent Hare a letter stating:
 "I thought we basically had this case settled in October; however, apparently I was in error. I need some dates to depose Jeff and Christie Beck. My *Page 846 
clients will still settle for $10,000, however that is to be paid in cash and not through any credits on any indebtedness the plaintiffs may owe to Freedom Financial."
On January 18, 2002, Hare sent Hanson a letter stating:
 "This will confirm our conversation of January 15, 2002, wherein we agreed to settle all of your clients' claims against our clients for $10,000, payable by February 15, 2002. I am enclosing a proposed release for execution by your clients and a proposed stipulation and judgment of dismissal to be signed by you and me dismissing the pending case with prejudice. When you have the release and stipulation fully executed, please let me know and I will obtain [a] check made payable to you as attorney for all eight clients."
On February 5, 2002, Hanson withdrew as the attorney for the plaintiffs. According to the defendants' brief on appeal, before withdrawing, Hanson informed Hare that one of the plaintiffs had reneged on the settlement agreement. In a letter to the plaintiffs dated January 24, 2002, Hanson stated that he was withdrawing as their legal counsel because of a "conflict of interest" involving the settlement agreement.
In their opposition to the defendants' motion to enforce the settlement agreement, the plaintiffs alleged that a settlement was not reached with the defendants. The plaintiffs argued that Hare's letter on behalf of the defendants specifically states that the check would be delivered when the release was executed and returned to his office; the plaintiffs did not sign or execute the proposed release, and the defendants never delivered the check to the plaintiffs or to Hanson. The plaintiffs averred that neither they nor the defendants had performed according to the alleged settlement agreement; the record on appeal contains an unsigned copy of the alleged settlement agreement. The plaintiffs also alleged that they did not give Hanson authority to enter into settlement negotiations or a settlement agreement.
In their postjudgment motion, the plaintiffs alleged that there had not been a meeting of the minds between them and the defendants, and they reiterated that they had not given Hanson express or implied authority to enter into settlement negotiations or to accept any offer of settlement on their behalf.
The affidavit of Manuella Benitez was attached to the plaintiffs' postjudgment motion. In her affidavit, Manuella states that she and Severiano rely upon an interpreter, because neither of them writes or speaks English. Manuella states that Eva Patterson, her interpreter at the time of the settlement negotiations, called her with news of the defendants' $10,000 settlement offer. According to Manuella, she expressly rejected the offer because she had not authorized Hanson to engage in settlement negotiations. In the affidavit, Manuella testified that she was not aware of the proposed settlement agreement until she received the January 24, 2002, letter from Hanson.
Patterson's affidavit was also attached to the plaintiffs' postjudgment motion. Patterson states that Hanson telephoned her with the defendants' $10,000 settlement offer. Patterson contacted Manuella the same evening with the offer, which, she states, Manuella rejected. Within the next week, Patterson telephoned Hanson and informed him of Manuella's decision to reject the offer. According to Patterson, Hanson stated that if the plaintiffs did not accept the $10,000 offer, they "might not get anything."
In its December 18, 2002, order, the trial court determined that the plaintiffs' argument that Hanson "had been without authority to enter into any final settlement *Page 847 
agreement with the defendants" was not legally sufficient. The trial court also found that the plaintiffs had not alleged that the settlement was obtained through fraud, accident, or mistake. The trial court held that, at the time of the settlement, the April 12, 2001, order "dropping" six of the eight plaintiffs was not a final judgment. Therefore, the trial court ordered the defendants to pay the $10,000 settlement amount to all eight plaintiffs, and it dismissed the plaintiffs' claims against the defendants.
The question on appeal is whether Hanson, the attorney for the plaintiffs who negotiated the alleged settlement agreement, was authorized to negotiate and enter into a binding settlement on behalf of the plaintiffs. The plaintiffs contend that Hanson lacked such authority, and, therefore, they argue, they are not bound by any agreement made by him with the defendants. The parties have acknowledged that settlement agreements entered into by attorneys are governed by § 34-3-21, Ala. Code 1975, which provides:
 "An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court."
However, that statute is not dispositive of the issue on appeal. This court has summarized the authority of an attorney to compromise his client's claim as follows:
 "'An attorney cannot settle a client's action or claim or prejudice a client's rights without authorization from the client. The power to compromise a demand does not arise from the power to sue or from an attorney's general authority which is usually limited in both duty and authority to the vigilant prosecution or defense of the rights of the client. The authority to settle is not incidental, but it is essential that an attorney have express, special authority from his client to do so. A person dealing with an attorney must ascertain the extent of the attorney's authority to compromise the client's claim. "An attorney employed to represent a litigant in the prosecution or defense of a suit is a special agent of his client and has no implied or inherent authority or right to compromise and settle it." An agent's apparent authority must be founded upon the conduct of the principal and not upon the conduct of the agent.'"
Warner v. Pony Express Courier Corp., 675 So.2d 1317, 1320 (Ala.Civ.App. 1996) (quoting Daniel v. Scott, 455 So.2d 30, 32-33 (Ala.Civ.App. 1984) (quoting in turn Crawford v. Tucker, 258 Ala. 658, 663, 64 So.2d 411, 416
(1953))). (Emphasis added.)
"'[A] judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry.'" Blackwell v. Adams, 467 So.2d 680, 684-85 (Ala. 1985) (quoting Bradford Exch. v. Trein's Exch., 600 F.2d 99, 102 (7th Cir. 1979)). Whether an attorney has the authority to settle a case on behalf of his client is always a question of fact. Blackwell v. Adams, supra. Where a trial court does not make an express finding of a particular fact, this court will assume that it found the fact necessary to support its judgment unless the finding of fact would be clearly erroneous and against the great weight of the evidence. Jones v. Stedman, 595 So.2d 1355
(Ala. 1992).
In its order, the trial court made no express finding that Hanson had the authority to enter into a settlement on behalf of the plaintiffs. Because the trial court did not hold a hearing and did not hear testimony or receive evidence in this matter, it could not have made a finding of fact that Hanson had the "express, special authority" to bind the plaintiffs to the settlement agreement. Warner v. Pony *Page 848 Express CourierCorp., 675 So.2d at 1320. While there is evidence that Hanson and Hare might have negotiated a settlement, there is no evidence in the record that the plaintiffs gave Hanson their express authority to bind them to that settlement agreement.
Although this issue is dispositive of the appeal, it is not the only question of fact that needs to be addressed upon remand to the trial court. The plaintiffs have also argued that there was no "meeting of the minds" between the defendants and them, that there were no mutual letters confirming any settlement, and that the terms of the alleged settlement agreement were not followed. If the trial court determines on remand that Hanson had the authority to bind the plaintiffs to a settlement agreement, the trial court must then resolve whether an actual settlement agreement was reached by the parties. The trial court's order is reversed and this cause is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, PITTMAN, and MURDOCK, JJ., concur.
[1] The other named plaintiffs were Severiano's wife, Manuella Rios Benitez; Jamie Rios Benitez; Maria Epifania Benitez; Miguel A. Gaspar; Delores P. Gaspar; Francisco Martin Juan; and Angelina F. Juan.