[1] Chad A. Burch died while this case was pending in the trial court, leaving John Burton Farley, Jr., as the only named defendant.
This appeal involves the judicial enforcement of a settlement agreement. We remand the cause for clarification of the trial court's order.
In the underlying action, Donna Jo Chapman Alexander retained Gadsden attorney Gary Bone to represent her, on a contingent-fee basis, in recovering damages for personal injuries she received in an automobile accident. Bone filed an action on her behalf in the Etowah Circuit Court. He associated Birmingham attorney Ted Mann to handle certain aspects of the case. Under their agreed-upon division of labor, only Bone had direct communications with Alexander, and Mann handled all of the negotiations and other communications with Birmingham attorney David A. Lee, who had been engaged by the liability insurance carrier for defendant John Burton Farley, Jr., to represent him.
After extended negotiations between Lee and Mann and consultations between Mann and Bone, Lee tendered his "final" settlement offer of $60,000. Mann relayed that offer to Bone, who subsequently advised Mann that Alexander had agreed to accept it. Just what communications Bone had with Alexander about the settlement offer is at the heart of this appeal.
After Mann contacted Lee and told him that the $60,000 offer had been accepted, Lee procured a settlement check from the insurance carrier and tendered it to Mann along with a joint motion for dismissal of the action with prejudice and a general release to be executed by Alexander. Alexander, however, declined to proceed with the settlement, at some point insisting that she had not authorized it. Mann and Bone *Page 994 
withdrew from representing her and filed a notice of a claim of an attorney's lien for their fees and expenses.
On May 21, 2005, Lee, on behalf of the defendant, filed a motion seeking to enforce the settlement agreement, reciting the pertinent underlying facts as known to Lee. The circuit judge to whom the pending personal-injury action was assigned scheduled the motion for hearing on August 16, 2005; when that hearing convened, Alexander, Bone, Mann, and Lee were in attendance. Although no one was placed under oath, the judge developed each person's version of the pertinent facts by careful questioning and otherwise afforded each participant an opportunity to describe in detail everything he or she wanted the judge to know about the. underlying case and the various communications concerning settlement. The factual recitations of Mann and Lee concerning their dealings with one another, and the factual recitations of Mann and Bone concerning their dealings with one another. were undisputed. Clearly Mann understood from Bone that Alexander had authorized the settlement and Mann and Lee, in turn, understood that they had entered into a binding settlement.
Bone told the judge at the hearing that he had communicated the $60,000 offer to Alexander and that she had initially rejected it, but then had told him that she would think about it for a couple of days. Bone stated that at the end of that time, Alexander telephoned him to ask if the offer was the best he could do, and, after he told her that it was, she said, "[I]f that's all you can do, then do it." Bone then telephoned Mann and told him Alexander had accepted the settlement offer. Bone explained that after Mann forwarded the settlement check and attendant paperwork to him, he notified Alexander to come to his office to conclude the matter, and she agreed to do so. She never came in, however, and Bone eventually elected to withdraw from representing her. He could not recall any conversation he had had with her before he decided to withdraw in which she might have explained to him the reason for her failure to follow through with the settlement.
Alexander gave the court an entirely different version of the communications, or lack of communications, between her and Bone during that time frame. She adamantly and repeatedly insisted to the trial judge that she had never heard of the $60,000 settlement offer before her attorneys accepted it, that she had never discussed any such settlement figure with Bone, that she would never have agreed to a settlement for that amount, that she never accepted it, and that she never authorized Bone to settle her personal-injury action for that amount. She stated further that she had had no idea that her case had supposedly been settled until she received some correspondence from Mann and telephoned him.
Thus, the trial judge was confronted with the diametrically opposed versions of the facts by Bone and Alexander as to whether Bone had contacted Alexander about the $60,000 settlement offer and what communications had ensued between them.
At the conclusion of the hearing the trial judge undertook to explain to Alexander, who was appearing pro se, the judge's understanding of the law that applied to the situation before him. Because the judge's lengthy statement in that regard, including exchanges between the judge and Alexander and the judge and Lee, is critical to our analysis of the proper disposition of this appeal, we set it out at length:
 "THE COURT: Let me explain to you the law in this case, ma'am, as best I *Page 995 
can. I've never run into a situation quite like this before.
 "MS. ALEXANDER: Uh-huh.
 "THE COURT: But under Alabama law, when an attorney is representing an individual and, you know, they have the authority under Alabama law to act for that individual.
 "That's the only way the system can work. And everybody in this room, you know — And I'm not being flippant about this when I say this, but I mean, the attorneys in this room all agree that they indicated to Mr. Lee, who talked to his insurance company and everything, and they settled this case for sixty thousand dollars.
 "There's no question that happened. I mean, the question before the Court is your conversation with Mr. Bone, because as Mr. Mann stated, you didn't talk to Ted Mann. I know y'all have a little dispute about a conversation you had, but that's not really the main issue in the Court today. I think you agree with that.
 "MS. ALEXANDER: Right.
 "THE COURT: I think the conversation you had with Mr. Lee is not really the main issue in the court; today.
 "MS. ALEXANDER: Right.
 "THE COURT: This issue in this Court today is the conversations that you had with Mr. Bone.
 "MS. ALEXANDER: Yes, sir.
 "THE COURT: You agree with me on that, do you not?
 "MS. ALEXANDER: Yes, sir. Which was not — it was never an agreement of no settlement as far as —
 "THE COURT: But Alabama law tells a Court and tells a judge that if a lawyer acting on behalf of a client settles a case, the court has to enforce that settlement if the lawyer states to the Court that that is the settlement of the case.
 "I mean, David [Lee], is that your understanding of the law?
 "MR. LEE: Yes, sir.
 "THE COURT: I mean, I've been down this road on motion to enforce settlements before. Normally, what has happened is the client is upset with the amount, you know, later on.
 "I've never had a case where the client comes in and tells me she didn't agree to anything.
 "Ma'am, I'm not disputing anything you're saying or Mr. Bone. I want you to understand that. And when I'm making this ruling, I want you to understand that I'm not sitting here passing judgment on the truth and veracity of you or Mr. Bone."
 ". . . .
 "And I'm not asking these gentlemen [referring to Bone and Mann], because I know they have a personal interest in the case, David [referring to Lee]. That's why I'm asking you. Am I correct — is it your understanding in the law that if an attorney makes a settlement, that the Court is to enforce the settlement?
 "MR. LEE: Yes, sir. I think that's a correct statement of the law.
 "THE COURT: And I want Mrs. Alexander to understand that. I mean, this is a small town. We know each other. These lawyers practice before me all the time. I know David Lee. But, I mean, he hasn't been before me. I know his law partners real well.
 "In fact, one of them lives with me almost up here in cases. But I want you to understand the reason that this Court is saying what it's saving, and I want to make sure that I'm quoting the law correctly, because I've been down this road *Page 996 
on motions to enforce — many times over the years.
 "I've just never had one where somebody has come in and told me the lawyer is just fiat out telling an untruth, which is what you're telling me today.
 "Now, the ruling of this Court is that this settlement is going to be en forced. . . .
 ". . .
 "THE COURT: All right. So. I'm directing that you — Mr. Lee, I'm directing that you draw up an order that this settlement is enforced and that this money will be paid into the Circuit Clerk's Office. . . ."
In Warner v. Pony Express Courier Corp.,675 So.2d 1317, 1320 (Ala.Civ.App. 1996), the Court of Civil Appeals accurately summarized the caselaw on point as to this issue:
 "In Hawk v. Biggio, 372 So.2d 303
(Ala. 1979), a party argued that the evidence failed to show that his attorney had the authority to agree to a settlement. The trial court concluded that § 34-3-21, Ala. Code 1975, gave an attorney the authority, as a matter of taw, to make a settlement for his client. That section provides:
 "`An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court."
 "The supreme court reversed, holding that § 34-3-21 was not dispositive of the issue. Instead, the court concluded, it is always a question of fact whether an attorney has the authority to make a settlement on behalf of his client. `[O]ur cases have consistently held that whether an attorney has authority to bind his client by an agreement to settle the case by consent is a question of fact.' Black well v. Adams, 467 So.2d 680, 684 (Ala. 1985).
 "`An attorney may not consent to a final disposition of his client's case without express authority. Although an attorney of record is presumed to have his client's authority to compromise and settle litigation, a judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry.' Blackwell v. Adams, 467 So.2d at 684-85 (quoting Bradford Exchange v. Trein's Exchange, 600 F.2d 99, 102 (7th Cir.1979)). `[A]n attorney in this state may not "compromise" his "client's cause of action" except on the "express authority of the client."' K.P. v. Reed, 626 So.2d 1241, 1242-43 (Ala. 1992).
 "In Daniel v. Scott, 455 So.2d 30
(Ala.Civ.App. 1984), this court summarized the `appropriate law of Alabama upon the power of an attorney to compromise' his client's claim, as follows:
 "`An attorney cannot settle a client's action or claim or prejudice a client's rights without authorization from the client. The power to compromise a demand does not arise from the power to sue or from an attorney's general authority which is usually limited in both duty and authority to the vigilant prosecution or defense of the rights of the client. The authority to settle is not incidental, but it is essential that an attorney have express, special authority from his client to do so. A person dealing with an attorney must ascertain the extent of the attorney's authority to compromise the client's claim. "An attorney employed to represent a litigant in the prosecution or defense of a suit is a special agent of his client and has no implied or inherent authority or right to compromise and settle it." An agent's apparent *Page 997 
authority must be founded upon the conduct of the principal and not upon the conduct of the agent.'
 "Daniel v. Scott, 455 So.2d at 32-33
(quoting Crawford v. Tucker, 258 Ala. 658, 663, 64 So.2d 411, 416 (1953))."
See also Goodwyn, Mills Cawood, Inc. v. Markel Ins.Co., 911 So.2d 1044, 1049 (Ala. 2004); and Roberson v.State ex rel. Smith, 842 So.2d 709, 711-12 (Ala.Civ.App. 2002).
In her brief to this Court, Alexander cites Blackwell v.Adams, 467 So.2d 680 (Ala. 1985), Warner v. PonyExpress Courier Corp., supra, and Crawford v.Tucker, 258 Ala. 658, 64 So.2d 411 (1953), in arguing that an attorney may not consent to final disposition of a client's case without the client's express authority and that a judgment entered on the basis of a settlement agreement entered into by an attorney may be set aside on affirmative proof that the attorney had no authorization to consent to the agreement.[3]
In the brief Lee has filed with this Court on behalf of the defendant, Lee argues that because "both Mr. Mann and Mr. Bone testified that they had authority from [Alexander] to settle the case for $60,000," the ore tenus rule comes into play; under that rule "a trial court's ruling based upon oretenus evidence must be affirmed `if, under any reasonable aspect of the testimony there is credible evidence to support the judgment.' Pforr v. Intercorp., Inc.,577 So.2d 1291, 1293 (Ala. 1991)." The argument is then advanced, "Clearly, the trial court heard testimony from both of [Alexander's] former attorneys substantiating the trial court's conclusion that they had authority to settle the present action and enter into the settlement agreement in question." (Lee's brief, p. 11.) In that regard, Lee points out that the formal order entered by the trial court confirming its bench ruling that the $60,000 settlement was due to be enforced (which order was drafted by Lee and submitted to the court at the court's request) notes the dispute between Bone and Alexander about settlement authority and then states "[b]ased upon the representations made at the hearing on the Motion to Enforce Settlement Agreement and based upon the applicable law of the State of Alabama the Court finds that the defendant's Motion to Enforce Settlement Agreement is due to be GRANTED." In essence, Lee argues that the trial judge resolved the conflict in the "ore tenus testimony" of Bone and Alexander and concluded that Alexander had in fact given her attorneys authority to settle her personal-injury case for $60,000. The trial judge did not expressly make any such finding, however, and although "where the trial court fails to make a specific finding of fact as to whether a party's attorney is authorized to enter into a stipulation or compromise, such a finding is implicit in the trial court's order" (Roberson, 842 So.2d at 712), the trial judge's explanations to Alexander at the conclusion of the hearing appear affirmatively to state that he was forgoing making any finding concerning whether Bone had authority from Alexander to accept the offer as unnecessary to his holding.
If the judge had actually made a finding accepting Bone's version of the disputed *Page 998 
facts, or if the state of the record was such that a finding to that, effect could be deemed implicit in the trial court's order, we would affirm. The judge was entrusted with making the credibility choice as between Bone and Alexander, and there were collateral circumstances brought to the judge's attention, which we need not, discuss in this opinion, that would tend to support Bone's explanation of what had transpired.
Given the way the record stands, however, we elect to remand the case to afford the trial judge an opportunity to clarify his statements at the hearing concerning the controlling law and perhaps to reconcile them with the text of his written order. If the trial judge advises this Court on return to remand that he in fact made no finding in the final analysis concerning whether Bone had authorization from Alexander to accept a $60,000 settlement, then we will reverse his order and again remand with instructions that that necessary determination be made. On the other hand, if on return to remand the trial judge explains that he had meant to convey in his formal order that he had ultimately found that Bone had indeed received authorization from Alexander to accept the $60,000 settlement, the order now appealed from will be affirmed.
Accordingly, we remand with instructions for the trial court to explain on return to remand the intent and meaning of his final order with regard to a finding of fact of whether Bone was authorized by Alexander to accept the $60,000 settlement. The trial court shall provide that clarification to this Court within 28 days after the date this opinion is released.
REMANDED WITH INSTRUCTIONS.
NABERS, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
 On Return to Remand
HARWOOD, Justice.
On August 4, 2006, we remanded this case to the Etowah Circuit Court for that court to clarify whether it had made a factual finding as to whether Gary Bone, an attorney representing Donna Jo Chapman Alexander, the plaintiff in a personal-injury action, was authorized to accept a settlement on behalf of Alexander. On August 14, 2006, the circuit judge who had conducted the August 16, 2005, hearing referenced in our August 4, 2006, opinion, and who had entered the order referenced in that opinion, filed with this Court the following order on return to remand:
 "By decision released August 4, 2006, Justice Harwood, speaking for a unanimous Supreme Court, issued the following order to the undersigned:
 "`Accordingly, we remand with instructions for the trial court to explain on return to remand the intent and meaning of his final order with regard to a finding of fact of whether Bone was authorized by Alexander to accept the $60,000 settlement.'
 "Per the above direction from the Supreme Court, the undersigned finds as follows:
 "As stated in the transcript of the earlier hearing, the undersigned did NOT make a finding concerning whether Bone had authorization from Alexander to accept a $60,000 settlement. *Page 999 
 "In reading the Supreme Court decision, the undersigned finds that the above statement was all the Supreme Court directed the undersigned to address at this time and the undersigned will await further instructions from the Court."
Given that the trial judge advises us that he made no finding as to whether Bone had authorization from Alexander to accept the $60,000 settlement, and consistent with our explanation on original deliverance of the options available to us, depending upon the trial judge's response on return to remand, we hereby reverse the trial court's order and remand the case with instructions that the trial judge make the necessary determination as to whether Bone had authorization from Alexander to accept the $60,000 settlement. The trial judge may conduct such further hearings as he might deem appropriate, solely within his discretion. In that regard, we noted on original deliverance that none of the participants in the August 16, 2005, hearing had been placed under oath, but that that procedural omission was not raised by any of the parties either before the trial court or on appeal to this Court.
REVERSED AND REMANDED WITH INSTRUCTIONS.
NABERS, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
[3] Alexander also argues in her brief that § 34-3-21, Ala. Code 1975, set out in the excerpt from Warner v. PonyExpress Courier Corp. quoted above, would serve to preclude enforcement of the settlement because "[i]t is clear from the record that the oral agreement at issue here was not made in open court or during a pretrial conference and was not entered into in the minutes of open court." Because that argument was never presented to the trial court, we do not consider it to have been preserved for the purposes of this appeal. Alexander is represented by new counsel in this appeal.