SEE, Justice.[1]
J.K., individually and as next friend of his minor children K.K. and S.K., and P.K., the mother of the minor children, appeal from a judgment enforcing a settlement agreement with the defendants, UMS-Wright Corporation; Dr. Tony Havard, individually and in his official capacity as headmaster of the school; Mr. Ed Lathan, individually and in his official capacity as upper-school principal; and the members of the board of trustees of UMS-Wright. We affirm in part, reverse in part, and remand.
*302 I. Facts and Procedural History
UMS-Wright Corporation operates UMS-Wright Preparatory School, which is located in Mobile. In 2001, J.K. and P.K. had three children, V.K., S.K., and K.K., enrolled at UMS-Wright Preparatory School. On November 8, 2001, V.K. was placed on behavior and academic probation. According to a memorandum prepared by Principal Lathan, on the day after V.K. was placed on probation he violated the terms of that probation by making physical threats toward another student. Principal Lathan recommended that V.K. be expelled. On November 10, Principal Lathan informed P.K. that V.K. was being expelled from UMS-Wright Preparatory School.
On November 17, 2004, V.K. entered the UMS-Wright campus. School administrators approached him and asked him to leave. UMS-Wright sent a letter to J.K. and P.K. informing them that V.K. had violated UMS-Wright policy by entering the campus without permission, that V.K. was not to enter the campus without prior administrative permission, and that the letter was to serve as “a trespassing after warning letter.” Principal Lathan conferred with P.K. to discuss the trespassing incident. Principal Lathan informed P.K. that, if V.K. continued to enter the UMS-Wright campus, he would be arrested and that any further incidents involving V.K. could jeopardize S.K. and K.K.’s enrollment at the school.
During the 2005-2006 school year, S.K. and K.K. were enrolled as students at the school. On March 28, 2006, V.K., who was by then an adult, and two unidentified companions entered the UMS-Wright campus and confronted a student. V.K., or one of his companions, assaulted the student and knocked him unconscious. Another student attempted to help his unconscious classmate. While the student was struggling with one of V.K.’s companions, his wallet fell onto the ground, and one of V.K.’s companions took the wallet. V.K. and his companions then left the campus.
The next day Dr. Havard learned about the incident. He believed that, so long as S.K. and K.K. were enrolled as students, V.K. would continue to have a reason to come onto the campus. Therefore, he concluded, S.K. and K.K.’s enrollment at UMS-Wright Preparatory School posed a safety risk to students and staff. On March 30, 2006, Dr. Havard met with P.K. and told her that S.K. and K.K. were being dismissed as students. Security escorted P.K., S.K., and K.K. from the UMS-Wright campus.
On April 6, 2006, J.K., individually and as next friend of S.K. and K.K., and P.K. sued UMS-Wright Corporation, Dr. Ha-vard, and Principal Lathan (hereinafter referred to collectively as “UMS-Wright”), as well as the members of the board of trustees of UMS-Wright Corporation, alleging negligence, breach of contract, and due-process violations. J.K. and P.K. also alleged against Dr. Havard and Principal Lathan, both in their individual capacities and as employees of UMS-Wright Corporation, intentional infliction of emotional distress as to P.K., S.K., and K.K. In the final count of the complaint, J.K. and P.K. alleged that the members of the board of trustees negligently and/or wantonly failed to supervise the school’s employees and staff.[2] J.K. and P.K. also moved for a temporary restraining order, contending that S.K. and K.K. would be irreparably *303 harmed if they were not immediately reinstated as students and contending that an expulsion on their academic records would adversely impact their prospects for admission to the college or university of their choice. After hearing arguments, the trial court denied the motion for a temporary restraining order.
Four days later, J.K. and P.K. moved for a preliminary injunction. The trial court held a hearing on the motion, but the parties reached an agreement before the trial court decided the motion. The agreement allowed S.K. and K.K. to complete their school year at home but prohibited S.K. and K.K. from entering the UMS-Wright campus or attending any school functions. This agreement effectively rendered moot the pending petition for injunc-tive relief.
On April 20, 2006, the members of the board of trustees moved the trial court to dismiss all claims against them, arguing that pursuant to § 10-11-3, Ala.Code 1975, the trustees, as non-compensated officers of a not-for-profit institution, are immune from suit. The trial court heard oral arguments from the parties and dismissed with prejudice all the claims against the members of the board of trustees. J.K. and P.K. moved the trial court to reconsider that dismissal, but the trial court denied the motion.
The remaining parties entered into settlement negotiations. They discussed the dismissal of the action in exchange for a letter of apology from Dr. Havard. At a second meeting, Chris Galanos, one of the attorneys for J.K. and P.K., apparently represented to the other parties that he had the authority to settle the ease.[3] Counsel for UMS-Wright presented J.K. and P.K’s attorneys with a proposed letter of apology, a stipulation for dismissal with prejudice, a proposed settlement agreement, and a proposed release. J.K. and P.K’s attorneys reviewed the documents and signed the stipulation for dismissal; however, they did not sign the proposed settlement agreement or proposed release, in order to give J.K. the opportunity to review the documents, including the proposed letter of apology. According to UMS-Wright, J.K. and P.K. were to sign the settlement agreement, and counsel for UMS-Wright would then file the joint stipulation for dismissal.
J.K. refused to sign the settlement agreement. Consequently, UMS-Wright’s attorney wrote a letter to J.K. and P.K’s counsel stating that it was his belief that the parties had reached a valid settlement and that if J.K. and P.K. did not sign the settlement agreement UMS-Wright would move to enforce the settlement agreement. Counsel for J.K. and P.K. responded by letter indicating that his clients were willing to settle the case if Dr. Havard would agree to sign a proposed letter of apology drafted by J.K. The attorneys for the parties scheduled a meeting between Dr. Ha-vard and J.K. so that they could attempt to resolve the dispute. That meeting, however, did not occur.
UMS-Wright moved to enforce the settlement agreement. J.K. and P.K. responded that the settlement agreement was not enforceable against S.K. and K.K., because a next friend does not have the authority to settle the case on behalf of a minor. Therefore, they argued, the settlement could not be enforced against S.K. and K.K. without the appointment of a guardian ad litem and a pro ami hearing. Also, although J.K. and P.K. acknowledged that an attorney has the authority to bind a client, they argued that the settlement *304 agreement is unenforceable against them because, they say, it does not comply with the requirements of § 34-3-21, Ala.Code 1975.[4] Specifically, J.K. and P.K. contended that the agreement does not satisfy the requirements of the statute because it had not been reduced to writing or entered upon the minutes of the court and because there had been no meeting of the minds as to the terms of the settlement. UMS-Wright agreed that a pro ami hearing was needed to enforce the settlement agreement against S.K. and K.K.
The trial court held a hearing and granted UMS-Wright’s motion to enforce the settlement agreement against J.K. and P.K. and, based on the stipulation of dismissal, dismissed J.K. and P.K.’s claims against UMS-Wright and scheduled a pro ami hearing to determine whether the agreement was enforceable as to the minor children.
J.K. and P.K. moved the trial court to vacate and/or set aside the dismissal of them claims. J.K. and P.K. reiterated their argument that the settlement agreement was unenforceable against them because it had not been reduced to writing or entered upon the minutes of the court. J.K. and P.K. argued further that their attorney did not have the authority to bind them to the settlement agreement.
The trial court held a pro ami hearing that included testimony from J.K., P.K., S.K., and K.K. At the conclusion of the hearing, the trial judge found that the settlement was in the best interests of the children and dismissed the remaining claims against UMS-Wright. He later entered a final order denying J.K. and P.K.’s motion to vacate or set aside the dismissal of their claims and confirming the finding that the settlement was in the best interests of the children. J.K. and P.K. appeal.
II. Dismissal of the Board, of Trustees
A. Standard of Review
“The appropriate standard of review of a trial court’s grant of a motion to dismiss under Rule 12(b)(6) is
“ ‘ “ ‘whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail.’ ” ’ ”
Rester v. McWane, Inc., 962 So.2d 183, 185 (Ala.2007) (quoting EB Invs., L.L.C. v. Atlantis Dev., Inc., 930 So.2d 502, 507 (Ala.2005), quoting in turn other cases).
B. Analysis
J.K. and P.K. first argue that the trial court erred in dismissing the members of the board of trustees as defendants only two weeks after their action was filed. In their motion to dismiss, the trustees argued that they were entitled to immunity under § 10-11-3, Ala.Code 1975, which provides:
“Any noncompensated officer of a qualified entity shall be immune from suit and not subject to civil liability arising from the conduct of the affairs of such qualified entity except when the act or omission of such officer, which gives rise to a cause of action, amounts to willful or wanton misconduct or fraud, or gross negligence. Provided however, such immunity shall not, except to such extent as may otherwise be provided by *305 law, extend to the qualified entity, to a for-profit subsidiary of such qualified entity or to the officers of such for-profit subsidiary but only to the qualified entity’s officers as defined in this chapter. Nothing contained herein shall be construed to immunize the corporate entity or qualified entity for the acts or omissions of noncompensated officers as defined in this chapter.”
A qualified entity is defined as “[a]ny not-for-profit corporation, association or organization which is exempt from federal income taxation under Section 501(c) of the Internal Revenue Code of 1954, as amended.” Section 10 — 11—2(l)(a), Ala.Code 1975.[5] J.K. and P.K. contend that the trustees are not entitled to the qualified immunity provided by § 10-11-3 because their complaint alleged that the board of trustees had acted “negligently/wantonly.” Therefore, we must determine whether J.K. and P.K. alleged any cause of action that could overcome the trustees’ claim of immunity.
J.K. and P.K. named the board of trustees as defendants in four of the six claims asserted in the complaint. The only claims that could arguably overcome the trustees’ invocation of immunity are the claims in Counts one and six of the complaint, alleging, as to the trustees, “negligent/wanton” conduct and “negligentywanton” failure to supervise.
J.K. and P.K. do not adequately demonstrate in their brief to this Court how the trial court erred in dismissing with prejudice them claims against the trustees. They cite Shaddix v. United Ins. Co. of America, 678 So.2d 1097 (Ala. Civ.App.1995), for the general proposition that a dismissal based upon a failure to state a claim for which relief can be granted is properly granted only when the plaintiff cannot prove any set of facts that would entitle the plaintiff to relief. Although this accurately describes the legal standard with which a court evaluates a Rule 12(b)(6), Ala. R. Civ. P., motion, J.K. and P.K. do not point to any set of facts that would entitle them to relief on their claims that the trustees acted wantonly by dismissing S.K. and K.K. as students.[6] J.K. and P.K. merely cite to page 7 of their complaint, where they allege that the defendants, including the members of the board of trustees, “owed the Plaintiffs’ minor children the duty to fairly and impartially promulgate rules governing honor, personal conduct, and academic standards and avoid arbitrary and capricious decisions in enforcing those rules,” and that UMS-Wright and the members of the board of trustees wantonly breached those duties by expelling the children based upon the conduct of a third party. These allegations do not demonstrate that the members of the board of trustees were or could have been wanton in the performance of their alleged responsibilities. Not only do J.K. and P.K. not describe with any specificity conduct of the trustees that they consider to have been wanton, but they also fail to cite any statute or caselaw that defines wantonness, and they do not *306 illustrate how the actions by the members of the board of trustees could satisfy any such definition. “ ‘ “Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant.” ’ ” McCutchen Co. v. Media General, Inc., 988 So.2d 998, 1004 (Ala.2008) (quoting Henderson v. Alabama A & M Univ., 483 So.2d 392, 392 (Ala.1986), quoting in turn Gibson v. Nix, 460 So.2d 1346, 1347 (Ala.Civ.App.1984)). Because J.K. and P.K. have not provided us with a standard against which to evaluate the trustees’ allegedly wanton behavior in expelling the children on the basis of a third party’s actions, the trial court’s judgment on this issue is affirmed.
J.K. and P.K. also argue that the motion to dismiss filed by the members of the board of trustees should have been treated as a motion for a summary judgment, because in ruling on the motion the trial court considered matters outside the pleadings. J.K. and P.K. cite Phillips v. AmSouth Bank, 833 So.2d 29 (Ala.2002), for the proposition that a trial court commits reversible error if it converts a Rule 12(b)(6), Ala. R. Civ. P., motion into a motion for a summary judgment under Rule 56, Ala. R. Civ. P., and enters a summary judgment without affording the opposing party a reasonable opportunity to conduct discovery. See Rule 12(c), Ala. R. Civ. P. In Phillips, this Court stated that when a motion to dismiss is converted into a motion for a summary judgment, the nonmovant is entitled to receive “ ‘(1) adequate notice that the trial court intends to treat the motion as one for summary judgment and (2) a reasonable opportunity to present material in opposition.’ ” 833 So.2d at 31 (quoting Graveman v. Wind Drift Owners’ Ass’n, 607 So.2d 199, 202 (Ala.1992)). However, J.K. and P.K. do not argue that the members of the board of trustees submitted additional materials with their motion to dismiss. In fact, the materials in the record indicate that the trustees did not submit any accompanying affidavits or documents with their motion to dismiss. Therefore, Phillips does not support J.K. and P.K.’s argument. Because J.K. and P.K. have not adequately articulated how the trial court erred in dismissing with prejudice their claims against the members of the board of trustees, we affirm the trial court’s dismissal of those claims.[7]
III. Enforceability of Settlement Agreement
 J.K. and P.K. also argue that the trial court erred in finding that the settlement agreement was enforceable, because, they say, J.K. and P.K.’s attorney did not have express authority to bind them and them minor children to a settlement agreement. Section 34-3-21, Ala.Code 1975, provides: “An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court.” In applying *307 § 34-3-21, Alabama courts have recognized that
“ ‘ “[a]n attorney may not consent to a final disposition of his client’s case without express authority. Although an attorney of record is presumed to have his client’s authority to compromise and settle litigation, a judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry.” ’ ”
Roberson v. State ex rel. Smith, 842 So.2d 709, 712 (Ala.Civ.App.2002) (quoting Warner v. Pony Express Courier Corp., 675 So.2d 1317, 1320 (Ala.Civ.App.1996), quoting in turn Blackwell v. Adams, 467 So.2d 680, 684-85 (Ala.1985)). “ ‘ “[Wjhether an attorney has authority to bind his client by an agreement to settle the case by consent is a question of fact.” ’ ” Alexander v. Burch, 968 So.2d 992, 996 (Ala.2006) (quoting Warner, 675 So.2d at 1320, quoting in turn Blaclavell, 467 So.2d at 684). “Where a trial court does not make an express finding of a particular fact, this court will assume that it found the fact necessary to support its judgment unless the finding of fact would be clearly erroneous and against the great weight of the evidence.” Benitez v. Beck, 872 So.2d 844, 847 (Ala.Civ.App.2003) (citing Jones v. Stedman, 595 So.2d 1355 (Ala.1992)).
J.K. and P.K. also contend that the trial court erred in finding that the settlement agreement was enforceable because, they argue, the trial court never held a hearing to determine whether J.K. and P.K.’s attorney in fact had express authority to settle the case. J.K. and P.K. cite Alexander v. Burch for the proposition that “[a]n express finding of fact that the attorney had the authority to bind his client is a condition precedent to a conclusion that a settlement exists.” J.K. and P.K’s brief at 23. They maintain that “[t]he only way, therefore, to have determined the presence or absence of ‘express, special authority’ would have been to conduct an evidentiary hearing for the purpose of considering the testimony of [J.K.] and Mr. Galanos, since they were the only two persons who participated in the conversation.” J.K. and P.K’s reply brief at 10-11.
In Alexander, the plaintiff contested the enforceability of a proposed settlement agreement because the plaintiff insisted that she never authorized her attorney to settle her personal-injury claim for the particular amount in the settlement offer. At a hearing to determine the enforceability of the settlement agreement, the trial judge heard conflicting testimony from the plaintiff and her attorney concerning whether the attorney had authority to settle the plaintiffs claim. Alexander, 968 So.2d at 995. The trial judge found that the settlement agreement was enforceable. However, we reversed the judgment of the trial court, concluding that “[i]f the judge had actually made a finding accepting [the attorney’s] version of the disputed facts, or if the state of the record was such that a finding to that effect could be deemed implicit in the trial court’s order, we would affirm.” 968 So.2d at 997-98. We remanded the case with instructions for the trial court to explain on return to remand whether it had made a finding of fact regarding the settlement authority of the plaintiffs attorney.
Relying on Alexander, J.K. and P.K. argue that the trial court erred by failing to conduct a hearing to make an explicit finding of fact regarding whether their attorney was authorized to accept the proposed settlement agreement. In Alexander, the trial court had not made an explicit finding that the plaintiffs attorney was authorized to settle the plaintiffs claim. Further, the conflicting evidence in the record in Alexander, including a statement *308 by the trial judge that he was forgoing making a finding on the authority issue, did not allow this Court to assume that the trial judge had found that the attorney was authorized to settle the plaintiffs claim.
In this case, as in Alexander, the trial court did not make a finding of fact that J.K. and P.K’s attorney was authorized to settle the case. Moreover, J.K. and P.K’s attorney’s refusal to sign the settlement agreement and to approve the letter, J.K’s rejection of the proposed apology letter and his statement to the attorney that his authority to settle was subject to J.K.’s approval of the apology letter, the ongoing telephone conversations between counsel for UMS-Wright and J.K. and P.K.’s attorney after the settlement meeting, and the later scheduled-but-canceled meeting between J.K. and Dr. Havard indicate that no settlement had been reached because the attorneys were awaiting J.K. and P.K.’s approval of the settlement agreement. This Court will not assume that the trial court made the finding that J.K. authorized J.K. and P.K’s attorney to settle the case because that would appear to be against the great weight of the evidence. See Benitez, 872 So.2d at 847 (“Where a trial court does not make an express finding of a particular fact, this court will assume that it found the fact necessary to support its judgment unless the finding of fact would be clearly erroneous and against the great weight of the evidence.”).
This case, however, differs from Alexander in that J.K. and P.K. have argued only that the agreement was unenforceable because it was not reduced to writing or entered on the minutes of the court and because there was no meeting of the minds as to the terms of the agreement. J.K. and P.K. raised the argument that their attorney lacked the authority to settle the case in their postjudgment motion after the trial court had already found that the settlement agreement was enforceable and dismissed the claims against UMS-Wright. The trial court conducted a hearing, on September 27, 2006, to decide whether the settlement agreement was enforceable. Nothing in J.K. and P.K.’s response to UMS-Wright’s motion to enforce the settlement, or in the record, indicates whether J.K. and P.K’s attorney argued at that hearing that Galanos was not authorized to settle the case. As UMS-Wright points out, it was not until after the trial court decided that the settlement agreement was enforceable that J.K. and P.K. first argued that their attorney did not have the authority to settle the case. Because the issue of Galanos’s authority to settle was not before the trial court at the enforceability hearing, the trial judge was not required to make a finding of fact on that issue, and Alexander is inapposite. Therefore, we must determine whether a challenge to an attorney’s authority to settle a case, raised in a postjudgment motion, requires the trial court to conduct a hearing and make a finding of fact as to whether the attorney was authorized to settle the claim. We hold that it does.
In Warner v. Pony Express Courier Corp., supra, the attorneys met in the trial judge’s chambers to discuss the possibility of settling Warner’s claim. During the settlement negotiations, Warner’s attorney represented that Warner would accept $7,500 as a settlement for all demands. That settlement offer was ultimately accepted, and the trial court dismissed Warner’s action with prejudice. Warner moved the trial court to set aside the dismissal, arguing that he was unaware of the settlement and that he would not have agreed to its terms. Warner, 675 So.2d at 1319. The Court of Civil Appeals cited Jones v. Blanton, 644 So.2d 882 (Ala.1994), and Jones v. Stedman, 595 So.2d 1355 *309 (Ala.1992), for the rule that “if a party is present when a settlement agreement is announced by counsel in open court and the party fails to object to the settlement, the trial court is warranted in concluding that counsel has the apparent authority to settle the dispute.” Warner, 675 So.2d at 1320. The Court of Civil Appeals concluded, however, that there was insufficient evidence that Warner’s attorney had settlement authority because the trial court relied on an agreement between the attorneys when it dismissed the claims, and there was “no indication in the record ... that Warner was present during the settlement discussion in chambers.” Warner, 675 So.2d at 1321. The Court of Civil Appeals, therefore, reversed the trial court’s order denying the motion to vacate its dismissal and remanded the case to the trial court with instructions “to conduct a hearing to determine whether, at the time the settlement was stated to the court and the dismissal was entered, Warner’s attorney was authorized to settle Warner’s claims for $7500.” Warner, 675 So.2d at 1321.
In this case, neither J.K. nor P.K. was present at the settlement negotiations or at the enforceability hearing. Instead, the trial court relied on an agreement between counsel when it found that the settlement agreement was enforceable. Although the trial court was apparently not faced with the question whether J.K. had authorized J.K. and P.K.’s attorney to settle the case, the trial court was presented with that precise question when J.K. and P.K. moved the trial court to set aside or to vacate the dismissal of them claims against UMS-Wright. At that point, the trial court should have held a hearing to determine whether J.K. had authorized J.K. and P.K.’s attorney to settle the case. See Roberson, 842 So.2d at 713 (holding that “the trial court [exceeded] its discretion in failing to hold a hearing on the issue whether [counsel] had the authority to enter into the stipulation agreement on behalf of Roberson” when Roberson raised the issue of his attorney’s authority to settle in a motion for a new trial); see also, Garabedian v. Allstates Eng’g Co., 811 F.2d 802, 804 (3d Cir.1987) (stating that the district court erred in denying the motion to vacate because “[t]he district court should have held a hearing to determine whether Garabedian had indeed authorized Di Pietro to settle on the terms set forth in the proposed settlement agreement.”); Greater Kansas City Laborers Pension Fund v. Paramount Indus., Inc., 829 F.2d 644, 646 (8th Cir.1987) (holding that the trial court “erred in summarily denying the motion [to vacate the judgment] without any type of evidentiary hearing” after the plaintiffs argued that the attorney had agreed to the settlement without their consent). Because we hold that the trial court erred in denying the motion to set aside or to vacate its dismissal of J.K. and P.K’s claims without first holding a hearing to make a finding of fact as to whether J.K. had authorized J.K. and P.K’s attorney to settle the case, we reverse that aspect of the trial court’s judgment and remand this case with instructions that it conduct such a hearing and make an express finding.

Conclusion

We affirm that portion of the trial court’s judgment dismissing the claims against the members of the board of trustees. We reverse the trial court’s judgment denying J.K. and P.K.’s motion to set aside or vacate the dismissal of their remaining claims as to all other defendants, and we remand this case for the trial court to conduct a hearing to determine whether J.K. had authorized J.K. and P.K’s attor *310 ney to settle the case.[8]
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
BOLIN, J., concurs in part and dissents in part.

. This case was originally assigned to another Justice on this Court; it was reassigned to Justice See on April 22, 2008.

. Upon motion by UMS-Wright and the members of the board of trustees, V.K. was added as a third-party defendant.

. J.K. later informed Galanos that Galanos’s authority to settle the case was subject to J.K.'s prior approval of Dr. Havard's apology letter.

. Section 34-3-21, Ala.Code 1975, provides:
"An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court.”

. The Internal Revenue Code expressly provides that ”[c]orporations, and any community chest, fund, or foundation organized and operated exclusively for ... educational purposes” qualifies as a tax-exempt entity. I.R.C. § 501(c)(3) (2000).

. J.K. and P.K. also alleged in the complaint that the trustees wantonly failed to supervise the school’s employees. However, this claim is neither raised nor addressed in J.K. and P.K's principal or reply briefs on appeal; thus, we do not address this argument. " ‘[W]hen the appellant fails to invite the appellate court’s review of any issues raised from the court below, the trial court’s judgment is due to be affirmed.’ " Waters v. University of Alabama Hosps., 591 So.2d 450, 451 (Ala.1991) (quoting Wilger v. James, 431 So.2d 1166, 1168 (Ala.1983)).

. J.K. and P.K. also cite Parmater v. Amcord, Inc., 699 So.2d 1238 (Ala.1997), for the proposition that a dismissal with prejudice operates as an adjudication on the merits. J.K. and P.K. contend that "[t]he dismissal of the Board clearly was not an adjudication on tlte merits and resulted in a permanent denial of the fundamental right to prove a claim made in good faith.” J.K. and P.K.'s brief at 35. However, Pannater does not support J.K. and P.K.’s argument because this Court in Parma-ter merely concluded that a dismissal with prejudice can operate as an adjudication on the merits for res judicata purposes. 699 So.2d at 1241 ("Iowa courts have held that a settlement or consent judgment and subsequent dismissal with prejudice ... can be the basis of a plea of res judicata.... Likewise, this Court has also held that a dismissal with prejudice is an adjudication on the merits.”).

. Because we remand this case with instructions for the trial court to conduct a hearing to resolve whether J.K. and P.K.'s attorney was authorized to settle the case, we do not reach the remaining issues raised in this appeal.