**ASSOCIATES DISCOUNT CORPORATION**

v.

**Sophie GOLDMAN, Administratrix of the Estate of Maurice Goldman, Deceased, and Sophie Goldman, Individually, Appellant.**

**No. 75–1144.**

United States Court of Appeals, Third Circuit.

Argued Sept. 11, 1975.

Decided Oct. 30, 1975.

Paul H. Titus, Gordon David Fisher, Kaufman & Harris, Pittsburgh, Pa., for appellant.

Reed J. Davis, Stephen D. Prendergast, Davis & Mazzotta, Pittsburgh, Pa., for appellee.

Before ALDISERT, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The defendant Sophie Goldman appeals from the denial of her motion to vacate a consent judgment against her in a suit based upon a written guaranty. She alleged, and plaintiff Associates Discount Corporation did not controvert, that her signature on the agreement was a forgery. The district court concluded that this fact was not "newly discovered evidence" under Fed.R. Civ.P. 60(b)(2) and that there was no basis for a finding of inadvertence or excusable neglect on the part of defendant's counsel under Rule 60(b)(1).[1] We remand for a consideration of the existence of counsel's authority to consent to the entry of judgment.

Defendant's husband Maurice and his brother Max Goldman were partners in M & M Auto Sales for some time prior to April, 1966, and on several occasions borrowed money from Associates. Disputes arose, and in 1967 suit was filed in the district court against Associates by M & M, alleging destruction of its business. Associates counterclaimed against the Goldman brothers individually for sums allegedly then due and owing.

On May 20, 1968, two legal actions were instituted by Associates, one against Max Goldman and his wife Helen, the other against defendant Sophie and her husband Maurice. The complaints asserted that the Goldmans were liable to Associates as a result of written guaranties dated April 6, 1966. Samuel Rosenzweig, the attorney who represented M & M, filed answers for husband and wife in each suit. At that time no claim of forgery was made on Sophie's behalf. Later, the three suits were consolidated for final disposition.

On May 6, 1968, a few days before suit was filed against her, Sophie received a registered letter from Associates. It advised that Maurice and his brother were indebted to Associates by virtue of a judgment recorded in the state court. The letter continued, "[y]ou, as guarantor of this obligation, are liable for this amount . . . ." Attorney Rosenzweig acknowledged receipt by sending a letter four days later which began, "[y]our letters of May 4 and May 6, addressed to the Mrs. Goldmans above named, have been referred by them to the writer for reply." The correspondence made no reference to any defect in the guaranty agreement.

During the course of the litigation, Sophie's husband, Maurice, was deposed and stated that the signature on the guaranty was hers.

Maurice died on February 6, 1969, and in due course Mr. Rosenzweig prepared a motion to substitute Sophie as administratrix of her husband's estate. This document was mailed to her in August of 1970, and on receipt she telephoned the lawyer. During the course of the conversation Mr. Rosenzweig advised her that the litigation was not going well. Apparently this was the first time that Sophie and the lawyer had discussed the

---

1. Rule 60(b) provides in pertinent part:

'On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

case in any manner. In fact, at no time prior to the scheduled date of the trial did they meet face-to-face to review the cases.

With the death of Maurice and another important witness, Mr. Rosenzweig realized that M & M's case against Associates had little chance of success. He advised Max, the surviving brother, to consult another lawyer, Alan Garfinkel, Esquire. During August of 1970, Rosenzweig met with Max, his wife Helen, and Mr. Garfinkel, to discuss the unfavorable developments in the litigation. Sophie was not present at this meeting, so Rosenzweig asked the others to advise her of what had transpired. Helen did get in touch with Sophie; however, just what was discussed is not clear from the record.

The cases were set for trial on September 21, 1970, and on that date the attorneys discussed a settlement. Four days later, they signed a stipulation providing for the dismissal of M & M's case against Associates and for the entry of a judgment in its favor against the Goldmans individually in the amount of $36,000.00. The judgment was duly docketed on September 28.[2]

That same day Sophie called her brother, who in turn contacted Mr. Rosenzweig for an explanation of the situation. Mr. Garfinkel was also consulted about the matter. Soon thereafter present counsel were retained, and a petition to vacate the judgment was filed on December 21, 1970. After an evidentiary hearing, the district court denied the motion.

There is a dispute in the testimony as to whether Mr. Rosenzweig had advised Sophie of his proposed action before the stipulation was filed. He insists that he telephoned her prior to the event and:

"to the best of my ability explained what was transpiring and that a stipulation was going to be entered

. . . .

\* \* \* \* \* \*

"I thought that I had made it clear to her . . . .

\* \* \* \* \* \*

"I thought I had her consent."

Sophie's testimony, on the other hand, indicated some confusion arising out of the overlapping of the cases involved—the one filed by M & M and the other in which she was a defendant. Additionally, she expressed a lack of understanding that a judgment would be entered against her personally.

The district court's findings do not establish whether Mr. Rosenzweig's discussion with Sophie about the stipulation took place before or after it was signed. If the conversation occurred before the critical date, findings are necessary to determine Sophie's comprehension of the situation. Whether she understood that she was consenting to a judgment being entered against her personally, solely in her capacity of administratrix, or only with respect to M & M's suit is the pivotal issue. The record is equivocal and we are in no position to make the assessments of credibility which will be required. Because there was ample opportunity for failure of communication, it may well be that despite Mr. Rosenzweig's best efforts under the circumstances, Sophie did not fully appreciate what was being proposed.

■ *In re Gsand*, 153 F.2d 1001, 1006 (3d Cir. 1946), held that an attorney has no power to settle his client's case nor to consent to a dismissal of it upon the merits without express authority. No such authorization is implied in a mere retainer. Obviously, the same standards must apply when a consent judgment is to be entered against a client. *See Thomas v. Colorado Trust Deed Funds, Inc.*, 366 F.2d 136 (10th Cir. 1966).

■ In these days of bulging dockets, we recognize the courts' legitimate concern with finality of judgments and settlements. But when, as here, the manifestations of the client's anxiety occur

---

**2.** The motion to reopen the judgment is limited to that against Sophie Goldman as an individu-al. No question has been raised as to that against her as administratrix.

almost simultaneously with the entry of judgment and are inconsistent with an understanding of its consequences, the fact of consent requires scrutiny. The district court's opinion does not treat this issue but stops with a determination that Mr. Rosenzweig was, in fact, acting as counsel for Sophie. However, the inquiry cannot end there. It must address the question of authority to stipulate to the entry of judgment.

Having some bearing on the matter is the fact that the lawyer was unaware of a strong defense which might well prevent an unfavorable judgment. The question of authority in this respect blends into a consideration of the allegations of mistake and inadvertence. These grounds may be invoked whether they apply to counsel or to client. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2858.

Although the court found neither inadvertence nor excusable neglect on the part of counsel, it is undisputed that, at the time the consent judgment was entered, Mr. Rosenzweig did not know that Sophie's signature on the guaranty was a forgery. He had accepted Maurice's representation that the signature was genuine and, on this record, there would seem to have been no reason for counsel to suspect otherwise.

█ Plaintiff contends that Sophie did not exercise due diligence in the preparation of her defense and did not properly aid Mr. Rosenzweig. Yet, Associates bears some responsibility too. In addition to Maurice's statement on the authenticity of his wife's signature, Mr. Rosenzweig was confronted with the fact that an employee of Associates signed the guaranty and witnessed Sophie's signature. The district court found this conduct by Associates did not amount to fraud under 60(b)(3) because Sophie placed no reliance upon it. We do not find it necessary to decide if that ruling is correct. It is clear, however, that equitable principles apply to the resolution of the issues in 60(b) cases. *See* C. Wright & A. Miller, *supra*, § 2857.

Associates, in effect, seeks to deny the defendant a trial upon the merits because she did not. timely inform her counsel of a defense of which the plaintiff itself was aware. Indeed, in view of Maurice's misstatement, it is quite possible that counsel for Associates also was not aware of its employee's failure to properly verify Sophie's signature. But when that employee signed the document as a witness without any knowledge of its validity, he smudged Associates' hands or at least the finger that it now points at the defendant. Associates is not free of blame and its criticism of the defense overlooks its own failings. We think it important that, in appraising Sophie's due diligence, there be a corresponding consideration given to Associates' part in contributing to the mistake on the part of defendant's counsel. Since we are remanding for findings and consideration on the issue of authority, it will be in order also to reconsider whether mistake or inadvertence on the part of defendant's counsel are grounds for reopening the judgment.

The order of the district court will be vacated, and the case remanded for further proceedings consistent with this opinion.