**The BRADFORD EXCHANGE,
Plaintiff-Appellee,**

v.

**The TREIN'S EXCHANGE, Trein's Gift Collector Showcase, James Petrozzini, Gordon Brantley, and Mike Reimer, Defendants-Appellants.**

**No. 78–1942.**

United States Court of Appeals,
Seventh Circuit.

Argued April 19, 1979.

Decided June 15, 1979.

100

N. A. Giambalvo, Chicago, Ill., for defendants-appellants.

David S. Acker, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD and WOOD, Circuit Judges, and SOLOMON,* District Judge.

PER CURIAM.

Appellants (Trein's) appeal from a district court order denying their motion to modify part of an agreed permanent injunction.

The Trein's Exchange and appellee The Bradford Exchange (Bradford) both produce and sell limited edition collector's plates.

In 1977, Trein's produced a plate commemorating Norman Rockwell's painting of "The Doctor and the Doll" (the plate). They advertised the plate through a direct mailing to about 675,000 people. Trein's obtained the names by purchasing approximately 1,000,000 gummed mailing labels from Midwest Lists, a list broker connected with Bradford. Trein's paid $40,000 for the labels and agreed not to make or keep copies of them.

In January 1978, Bradford brought this action, charging Trein's with trade-mark violation, deceptive trade practices, unfair competition, and appropriation of Bradford's reputation and good will. They sought compensatory and punitive damages, and an order restraining Trein's from copying or imitating Bradford's logo or any of its business forms or literature. In addition, Bradford asked that Trein's "be ordered to inform their customers in writing that they have no connection or association of any kind with The Bradford Exchange."

Within a short time after the action was filed, attorneys for the parties met and arrived at a partial settlement which included an agreed injunction. The injunction, which was approved by the district

---

* The Honorable Gus J. Solomon, Senior District Judge of the United States District Court for the District of Oregon, is sitting by designation.

court on January 24, 1978, required Trein's to notify all persons to whom the plate advertisement was sent that Trein's has no connection, association, or affiliation with Bradford.

Trein's assert that when they received a copy of the agreed injunction, they discovered that their attorney had agreed to an injunction which required them to send a disclaimer to all persons who received the advertisement, rather than to 9,000 persons who had ordered the plates.

The attorney for Trein's immediately wrote to the attorney for Bradford to explain the mistake, and proposed an amendment to the injunction by which Trein's would send disclaimers to only those people who answered the advertisement.

Bradford refused to amend the injunction.

On February 3, 1978, Trein's filed a motion to correct the agreed injunction. In the notice of motion, Trein's set out the facts and sought equitable relief on the ground that it was unfair to hold them to the terms of the agreed injunction which had been executed by mistake.

On February 10, 1978, the district court denied the motion, but suggested that the parties try to agree upon an amendment to the injunction, "which the court believes should be possible." The court stated that "if defendants cannot reach an agreed amendment with plaintiff . . ., then a hearing will be required either on a motion filed under F.R.C.P. 60(b) or on some other equitable basis."

Bradford again refused to amend the injunction.

On February 21, 1978, Trein's filed a second and expanded motion to amend the injunction. They followed the district court's suggestion and moved under Rule 60(b). Trein's supported their motion with affidavits from their business manager, James Petrozzini, and their attorney.

In his affidavit, Petrozzini stated that, after receiving Bradford's complaint, he instructed Trein's attorneys to settle the injunctive aspects of the case. In particular,

he told the attorneys that Trein's would agree to notify all of their "customers that The Trein's Exchange had no connection with The Bradford Exchange." He assumed that the disclaimer would be sent to people who responded to the solicitation for the plate. Petrozzini did not believe that Bradford had a valid action, but he did not want to incur the costs of defense, particularly since the mailing campaign was so unsuccessful. He said that only about 9,000 people answered the advertisement, and that Trein's expected to lose at least $70,000 on it.

Petrozzini also stated that it would cost Trein's $140,000 to send disclaimers to all of the 675,000 people to whom the plate advertisement was sent. That, he asserted, was more than the cost of litigating the whole action. In addition, Trein's would have to purchase a new mailing list because they no longer had the original labels. There was no guarantee, however, that a new list would contain the same names as the original labels. And even if an identical list could be obtained, Petrozzini contended that he had no way to determine which 675,000 people received the plate advertisement, because approximately 300,000 out of the original 1,000,000 labels were used in a mailing which is unrelated to this action.

Finally, Petrozzini said that, if requested, Trein's would place disclaimer notices in trade magazines of general circulation.

Trein's attorney also filed an affidavit in which he said that his clients authorized him to agree to send a disclaimer to their customers as part of an agreed injunction. He "mistakenly assumed that this meant the persons to whom the [plate advertisement] was sent. After entry of the injunction, I was informed that my clients . . . would not have agreed to send the disclaimer to everyone who received the mailing . . ."

Bradford did not controvert either affidavit.

The court denied Trein's second motion without a hearing, even though it stated that "the hardship imposed on [Trein's] be-

cause of the apparent misunderstanding of their attorney may be onerous and expensive."

■ A motion under Rule 60(b) is addressed to the sound discretion of the district court and will be disturbed only for an abuse of discretion. *De Filippis v. United States,* 567 F.2d 341 (7th Cir. 1977).

■ An attorney may not consent to a final disposition of his client's case without express authority. *Associates Discount Corporation v. Goldman,* 524 F.2d 1051 (3rd Cir. 1975); *Thomas v. Colorado Trust Deed Funds, Inc.,* 366 F.2d 136 (10th Cir. 1966). Although an attorney of record is presumed to have his client's authority to compromise and settle litigation, a judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry. *United States v. Beebe,* 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563 (1901); *Thomas v. Colorado Trust Deed Funds, Inc., supra; In re Gsand,* 153 F.2d 1001 (3rd Cir. 1946).

In *Gsand,* a creditor's attorney was employed to prosecute a claim against a bankrupt debtor. He had no authority to consent to an order that cash payments previously made by the debtor were voidable preferences, so that his client had no right to them. The court held that the attorney's lack of authority entitled the creditor to have the consent order vacated under Rule 60(b)(1).

In *Thomas v. Colorado Trust Deed Funds, supra,* defendant Thomas did not authorize his attorney to stipulate to a judgment against him in an action brought by the Securities and Exchange Commission against five defendants. Thomas filed a motion under Rule 60(b) to vacate the judgment. The district court denied the motion. The Court of Appeals reversed.

In *Associates Discount v. Goldman, supra,* defendant's attorney stipulated to a consent judgment against defendant on a written guaranty. Defendant later contended that her attorney had no authority to stipulate to the consent judgment. She filed a motion to vacate the judgment. The district court denied the motion on the ground, among others, that even though the record was equivocal on the issue of counsel's authority, there was no basis for a finding of inadvertence or excusable neglect under Rule 60(b)(1). The Court of Appeals reversed and remanded to the district court to consider counsel's authority to consent to the entry of judgment. The Court stated that

"[t]he question of authority in this respect blends into a consideration of the allegations of mistake and inadvertence. These grounds may be invoked whether they apply to counsel or to client." 524 F.2d at 1054.

■ Here, Trein's presented affirmative evidence that their attorney had no authority to consent to an injunction which would require them to mail at least 675,000 disclaimers. Bradford has not controverted any of these statements. In our view, the obligations which Trein's assumed were so onerous and costly that it is dubious whether Trein's would have given their attorneys authority to stipulate to an injunction with such a provision.

In the circumstances, we remand this case to the district court to consider the existence of counsel's authority to consent to the agreed injunction, and to determine whether Trein's is entitled to be relieved of that portion of the injunction which requires them to send disclaimers to all persons who received the plate advertisement.

Reversed and Remanded.

HARLINGTON WOOD, Jr., Circuit Judge, dissenting.

I respectfully dissent.

Plaintiff raises issues questioning the timeliness of the appeal and the use by defendant of a Rule 60(b) motion. Although the majority does not directly address those preliminary issues, I have come to the conclusion, as is implied by the majority, that although the issues are not without some substance they are without merit.

However, I would not remand the issue of the attorney's authority for further hearing. I view this case only as one in which the defendants now seek to have this court relieve them from the burden of their own agreement, a burden which on second thought they decided was too much.

No one suggests that defendants' counsel was not experienced and competent, nor that defendants were not knowledgeable and experienced businessmen. They were in communication with each other. The language of this stipulation was plain, simple and understandable even by laymen. It provided that the defendants were to notify in writing "all persons" to whom they had sent the advertising material appropriated from plaintiff. Now defendants argue that they intended only to agree to notify those on the list who had responded and become "customers" of the defendants. "Customers" appears to be a new word. It does not appear in the stipulation. There is ample reason and justification for requiring defendants to notify all the people the second time that they did the first time whether the recipients of the misleading advertising responded or not. The effects of the misleading advertising could be lingering and harmful to plaintiff in its business and customer relations as plaintiff has alleged. It should be noted that defendants do not question the other provisions of the stipulation enjoining defendants from copying plaintiff's logo and forms, or distributing any more misleading advertising, or the requirement that defendants destroy what they have left of it.

I do not find it so dubious, as does the majority, that defendants would have agreed to use the same list the second time that they did the first. Originally when defendants thought they could benefit from a large mailing of misleading advertising in search of customers they did not question the expense involved. It would be expensive both times, but although the second mailing would not generate profits, it could at least be expected to minimize any damages which might be found owing by defendants. Defendants apparently did not consider their first improper mailing to be onerous, so I would not find a mailing for a good purpose to be onerous the second time around.

I would not disturb the trial judge's ruling and would affirm.