Rel: December 1, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0216

_____

**Robert Bowers, Jr., personal representative of the Estate of Charles Lewis Evans, deceased, et al.**

**v.**

**BBH SBMC, LLC, d/b/a Shelby Baptist Medical Center; Albert Sterns, M.D.; Island Medical Alabama, LLC; Island Medical Perseus, LLC; Island Medical RTR, LLC; and Terry Short**

**Appeal from the Shelby Circuit Court**
**(CV-16-000192)**

COOK, Justice.

This appeal primarily concerns an attorney's authority to settle wrongful-death claims. Robert Bowers, Jr., the personal representative of the estate of Charles Lewis Evans, deceased, challenges the summary judgment entered by the Shelby Circuit Court ("the trial court") in favor of Terry Short; BBH SBMC, LLC, d/b/a Shelby Baptist Medical Center; Albert Sterns, M.D.; Island Medical Alabama, LLC; Island Medical Perseus, LLC; and Island Medical RTR, LLC ("the defendants"). The trial court concluded that the claims against them were barred by previously executed general releases. The primary issue on appeal is whether one of those previously executed releases is binding on Bowers and, thus, bars his wrongful-death claims relating to the death of Charles Evans. For the reasons discussed below, we affirm in part, reverse in part, and remand with instructions.

Facts and Procedural History

While driving his car on January 12, 2016, Short collided with a vehicle carrying Charles Evans, John Edward Evans, and Linda Claxton Evans. After the accident, Linda, Charles's sister-in-law, was transported to the University of Alabama at Birmingham Hospital ("UAB Hospital"). Charles and his brother John were taken to Shelby Baptist

2

Medical Center for treatment. Shelby Baptist Medical Center discharged Charles later that night.

The next morning, on January 13, 2016, Charles collapsed at his home and was transported by emergency medical personnel to UAB Hospital. Around 4:35 p.m. that day, Nicholas Vocino, an attorney for the Slocumb Law Firm, LLC, ("the Slocumb firm") filed a complaint in the Chilton Circuit Court on behalf of John, as next friend of Charles, against Baptist Health System, Inc., and various fictitiously named defendants.[1] That complaint asserted a medical-malpractice claim under the Alabama Medical Liability Act, Ala. Code 1975, § 6-5-480 et seq., and § 6-5-540 et seq., as well as claims of negligence, wantonness, and recklessness.[2]

At around 8:00 p.m. that night, Charles died at UAB Hospital. According to affidavits, Charles had four siblings and heirs at the time of his death: John, Brenda Saylor, Stella Luna, and Doris Kornegay.

---

[1]At the time the complaint was filed, John possessed a power of attorney permitting him to act on Charles's behalf.

[2]That complaint did not specifically name and identify Short as a defendant. Instead, the complaint asserted the negligence, wantonness, and recklessness claims against fictitiously named defendants described as "those persons, firms, corporations, or other entities whose negligent, wanton, reckless and wrongful conduct caused the aforementioned motor vehicle collision on January 12, 2016 …."

On January 14, 2016, Vocino sent a letter to National General Insurance Company ("National General"), Short's insurer, which read, in pertinent part:

> "I represent John, Linda and <u>Charles Evans</u> for injuries they received in an accident which occurred on January 12, 2016. According to our investigation, your insured was at-fault in causing said accident and injuries. Please direct all future correspondence to my attention. You may contact my clients directly to resolve the property damage claim, conditioned upon any conversations with my clients being limited to the property damages alone with no inquiry of any sort concerning my client's injuries."

(Emphasis added.)[3]

The letter also "advised that any and all medical release(s) which may have previously been signed by [John, Linda, or Charles] are hereby withdrawn, revoked, or rescinded. Moreover, if my clients have provided any statements, whether oral or written, please provide my office with a transcribed copy of the same."

On February 1, 2016, Robin Lecin, an insurance adjuster for National General, sent Vocino a letter that stated, in pertinent part:

"Thank you for taking the time to speak with me today.

---

[3]Although Charles was dead at the time Vocino sent the letter to National General, Vocino represented that he was Charles's attorney. It is undisputed that, on January 14, 2016, no estate for Charles had been established and no personal representative had been appointed.

4

> "Mr. Short has bodily injury policy limits of $25,000 per person and $50,000 per accident. We are offering the policy limits of $50,000 to your three clients.
>
> "Please send me documentation of John Evans and Linda Evans'[s] injuries and a copy of Charles Evan[s's] death certificate. I will also need their social security numbers."

The letter from Lecin to Vocino listed "John Evans, Linda Evans and [t]he Estate of Charles Evans" as "Your Clients." Then, on February 18, 2016, National General issued two checks: one to "Linda Evans and her attorney Slocumb Law Firm LLC" for $20,000 and one to "John Edward Evans and his attorney Slocumb Law Firm LLC" for $15,000. National General also sent two documents entitled "RELEASE OF ALL CLAIMS" for John and Linda to sign.

The claims relating to Charles proved more difficult to resolve. According to Lecin, "[t]he Slocumb Law Firm represented [that] an administrator must [first] be appointed, and [that] the Slocumb Firm could then finalize the settlement with the administrator." On March 15, 2016, Vocino, on behalf of John, filed a petition in the Chilton Probate Court asking that letters of administration for Charles's estate be issued to a county administrator. The probate court appointed Bowers, a county administrator, as the personal representative of Charles's estate.

Also on March 15, 2016, Vocino, on behalf of John, as next friend of Charles, filed a suggestion of Charles's death in the action pending in the Chilton Circuit Court and moved to substitute Bowers, as the personal representative of Charles's estate, as the plaintiff in the action. The Chilton Circuit Court granted that motion.[4]

Two days later, on March 17, 2016, Vocino sent Lecin a letter that read: "I have attached the estate documentation we discussed." The letter from Vocino listed "Charles Evans," rather than the "Estate of Charles Evans" or Bowers, as "Our Client." Attached to the letter was the Chilton Probate Court's order granting letters of administration to Bowers. Lecin later confirmed that "the Slocumb Law Firm [had] provided evidence of [Bowers's] appointment on or about March 17, 2016."

On March 22, 2016, National General issued a third check in the amount of $15,000 to "Robert L. Bowers Jr. Attorney Administrator for the Estate of Charles Lewis Evans Jr. and Slocumb Law Firm LLC" and

---

[4]Despite the substitution of Bowers, the personal representative of Charles's estate, as the plaintiff, the subsequently filed amended complaints and the notice of appeal also listed as a party to the action "Charles Lewis Evans, who sues by and through his brother, custodian and next friend, John Edward Evans, for personal injuries." However, no issues have been raised on appeal regarding any claims asserted by John on behalf of Charles.

a document entitled "RELEASE OF ALL CLAIMS" relating to Charles. Although Bowers's name appears on the back of the check issued by National General, Bowers testified in his affidavit that he did not endorse the check. Bowers also stated that he did not "give anyone permission to endorse [his] name to that check" and that he has "not received any proceeds into the Estate of Charles Evans from the check."

On May 11, 2016, James R. Moncus, an attorney with Hare, Wynn, Newell & Newton, LLP, filed a notice of appearance for Bowers in the action pending in the Chilton Circuit Court. Later that day, the Chilton Circuit Court transferred the case to the trial court.

On September 6, 2016, John and Linda signed the releases sent by National General. The releases regarding John's and Linda's individual claims provided, in relevant part:

> "John [and Linda] Evans, being of lawful age, for the sole consideration of fifteen thousand and 00/100 Dollars ($15,000) to [John] [and $20,000 to Linda] … do/does hereby … release, acquit and forever discharge Terry Short, Integon National Insurance Company,[5] … and all other persons, firms, corporations, associations or partnerships of and from any and all claims of actions, demands, rights, damages, costs, loss of service, expenses, and compensation whatsoever, which the undersigned now has[] or may hereafter accrue on

---

[5]Integon National Insurance Company is an underwriting company for National General.

7

account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about 01/12/2016, at or near Maplesville AL."

John, however, also signed a second release on behalf of "the Estate of Charles Evans, Jr." That is, both Charles's and John's names are listed on the signature line of that release, and the notary certified that John had "executed the foregoing Release, … acknowledg[ing] to [her] that Charles Voluntarily executed the same." That release purportedly discharged all of the claims relating to Charles against Short, National General, and "all other persons, firms, corporations, associations or partnerships" in exchange for $15,000.

On September 28, 2016, Moncus filed an amended complaint on behalf of John, as next friend of Charles, and Bowers, as personal representative of Charles's estate, in the trial court. The amended complaint corrected the designation of "Baptist Health System, Inc." to "BBH SBMC, LLC, d/b/a/ Shelby Baptist Medical Center." The amended complaint also added Albert Sterns, M.D., as an additional defendant and included more detailed allegations in support of the medical-malpractice claims. Only Moncus was listed as "Of Counsel" on the amended

complaint. Then, on November 27, 2017, a second amended complaint was filed in the trial court. The second amended complaint asserted a wrongful-death claim based on medical malpractice against BBH SBMC, LLC; Island Medical Alabama, LLC; Island Medical Perseus, LLC; Island Medical RTR, LLC; and Dr. Sterns ("the malpractice defendants"). The second amended complaint also named Short as a defendant and asserted a wrongful-death claim based on negligence and wantonness against him. Finally, it added as plaintiffs John and Linda, in their individual capacities. John and Linda asserted claims of negligence and wantonness against Short and sought damages from Short for "personal injuries sustained in the automobile collision caused by … Short." Both Moncus and Vocino were listed as "Of Counsel" on the second amended complaint, which -- as noted above -- asserted new claims on behalf of John and Linda in addition to the claims relating to Charles.[6]

Approximately seven months later, in July 2018, Short filed a motion to dismiss or, in the alternative, for a summary judgment. In that

---

[6]The second amended complaint is the last document on which Vocino is listed as "Of Counsel" on behalf of John, Linda, and Bowers, although the defendants continued to serve their filings on Vocino throughout the litigation. The record does not indicate that Vocino withdrew as counsel.

9

motion, Short argued that John and Linda had released their individual claims against Short.

Short additionally asserted that, in September 2016, National General had received an executed release of the claims relating to Charles that was signed by John. According to Short, National General had believed that John and Linda were Charles's heirs and that they were therefore permitted under Alabama law to settle the claims relating to Charles. More specifically, Short stated that National General had "relied on … Vocino's assertion regarding the status of John and Linda Evans as heirs." Short additionally noted that "the settlement check was endorsed by Mr. Bowers." For those reasons, Short contended that "the settlement of [the] claims [relating to Charles was] valid and bind[ing] on [Bowers]." Short attached copies of all the checks and releases to his motion.

The response to Short's motion acknowledged that the releases signed by John and Linda discharged their individual claims against Short. Bowers, however, disputed that the releases discharged the wrongful-death claim against Short. Specifically, Bowers acknowledged that, before a personal representative is appointed, a wrongful-death

claim can be settled by the joint agreement of all of a decedent's heirs; however, he contended that the requisite joint agreement was not present in this case because, although Charles had four heirs, the purported release of the wrongful-death claim against Short was signed only by John. See Kennedy v. Davis, 171 Ala. 609, 55 So. 104 (1911); see also § 6-5-410, Ala. Code 1975 (authorizing only the personal representative of a decedent's estate to pursue a wrongful-death claim). Attached to the response were the affidavits of the three other heirs, who testified that they were unaware of, and did not authorize, any settlement of the wrongful-death claim. Thus, Bowers said, there was no joint agreement by the heirs to settle the wrongful-death claim.

Bowers further argued that, even if all four heirs had signed the release addressing the claims relating to Charles in September 2016, that release would not be binding on Bowers because, following his appointment as personal representative of Charles's estate on March 15, 2016, only he had the authority to settle the wrongful-death claim. Bowers alleged that he had no knowledge of the release addressing the claims relating to Charles. As for Short's allegation that Bowers had endorsed the settlement check, Bowers submitted an affidavit asserting

11

that he neither endorsed, nor gave anyone else permission to endorse, the check from National General. Accordingly, Bowers argued that the release, which did not contain Bowers's signature, and the check, which Bowers testified he did not endorse, did not constitute a binding settlement that precluded the wrongful-death claim against Short.

In October 2018, the trial court held a hearing on Short's motion. Although a transcript of that hearing is not in the record, it appears that, at the hearing, the trial court orally ordered the parties to submit additional briefing on the issues presented by the motion. In his post-hearing brief, Bowers reasserted his argument that there was no binding release of the wrongful-death claim, explaining that Short had "failed to produce a valid and enforceable release signed by Mr. Bowers, the only individual with legal capacity to bind Charles's estate." In Short's post-hearing brief, he argued that National General had negotiated the settlement in good faith and that "it is inequitable to allow [Bowers] to disavow the terms of the settlement and release agreements in favor of the pending litigation without evidence Mr. Short or his insurer participated in any nefarious conduct related to the settlements." Short noted that he had not been added as a defendant to this lawsuit until

"almost two years after the accident giving rise to this suit, and more than a year after [National General had] reached a settlement." He alleged that, because there was "no evidence [that Short] or [National General had] negotiated the settlement agreements in bad faith, or that either had any reason to believe the settlements were unenforceable," the trial court should enforce the release and resolve the wrongful-death claim against him in his favor.

The trial court held another hearing on November 20, 2019. At that hearing, it appears that "the court instructed the parties to gather all documents and/or things necessary for [an] evidentiary hearing."

After numerous hearings and additional briefing, Short filed a notice of evidentiary material in advance of a hearing set for October 11, 2022. Short attached various exhibits to the notice, including the correspondence between National General and Vocino, the three settlement checks, the releases signed by John, and John's affidavit. A transcript of the October 11, 2022, hearing is not in the record.

The trial court scheduled another hearing on Short's motion for November 29, 2022. In advance of that hearing, Short supplemented his earlier evidentiary submission to add the affidavit of Lecin, the National

13

General insurance adjuster. In relevant part, Lecin testified in her affidavit:

> "4. On or about January 13, 2016, National General … received notice from Nick Vocino of the Slocumb Law Firm, LLC, of its representation of John Evans, Linda Evans, and Charles Evans. … There was no express limitation of any kind regarding the scope of the Slocumb Law Firm's representation other than the property damage claim.
>
> "….
>
> "7. The settlement for the claims that could be brought by the personal representative of Charles Evans'[s] Estate, in the amount of $15,000.00, was negotiated by the Slocumb Law Firm for the same terms [as John's and Linda's settlements], specifically a full general release. The Slocumb Firm represented an administrator must be appointed, and the Slocumb Firm could then finalize the settlement with the administrator. On or about March 15, 2016, the County Administrator, Robert L. Bowers, Jr., was appointed as the Administrator. The Slocumb Law Firm provided evidence of the appointment on or about March 17, 2016. The Slocumb Law Firm accepted the $15,000.00 offer and full general release, to my understanding, with full authority on behalf of the Administrator of the Estate of Charles Evans. At no time did the Slocumb Law Firm expressly or impliedly state its representation of the Administrator was limited or restricted in any way. To the contrary, at all times <u>I relied on Slocumb Law Firm's conduct and representations</u> in negotiating this full general release for Mr. Short from counsel professing to represent the interests of the Administrator, and issued the settlement check in reliance on these representations on or about March 22, 2016. At the same time, I sent the general release for execution to the lawyer I believed was authorized to settle these claims.

14

"8. When the Slocumb Law Firm agreed to the settlement amount and general release for the Administrator of the Estate of Charles Evans, after the creation of the Estate and appointment of Mr. Bowers as the administrator, I believed the Slocumb Law Firm had full and final authority to negotiate on behalf of the Administrator of the Estate of Charles Evans, and relied on it in issuing the settlement check and providing the full general release agreed upon.

"9. The settlement check was signed by John Evans and the administrator. I have been told they contest their signatures. I have no knowledge of this, but can confirm that the check was fully negotiated."

(Emphasis added.)

At the November 2022 hearing, counsel for all the parties appeared for oral arguments on the pending legal issues. No witnesses were presented at that hearing.

At the hearing, Short argued that the wrongful-death claim against him should be resolved in his favor based on the terms of the release and Vocino's apparent authority to negotiate a settlement of that claim. Short stated that the Slocumb firm had petitioned the Chilton Probate Court to appoint a personal representative of Charles's estate and then had accepted the settlement offer from National General. Acknowledging that the Slocumb firm had "perhaps wandered outside of the purviews of its representation," Short emphasized that "at no point in time prior had Mr.

Slocumb's lawyer ever expressed any type of limitations on [his] ability to represent those claimants other than when [he] sent their initial letter of representation," which indicated that National General could settle only claims for property damage without dealing with the Slocumb firm.

Short argued that, once Bowers was appointed personal representative of Charles's estate, the Slocumb firm was his agent. Short acknowledged that "[t]he Slocumb firm negotiated [the settlement], and then when things went haywire, … wrote us a check back." However, he maintained his position that the release had been signed by someone at the Slocumb firm "purporting to represent" Bowers. Because National General had negotiated "in good faith" with the Slocumb firm, and because the Slocumb firm had agreed to a settlement of the wrongful-death claim against Short, Short contended, Bowers was bound by the release.

In response, Bowers argued that the wrongful-death claim against Short was not barred because there was no valid release as to that claim. Disputing Short's assertion that there had been a valid settlement of that claim based on Vocino's apparent authority to negotiate a settlement, Bowers argued that there was no writing from Vocino that would

constitute a binding settlement agreement. Bowers pointed out that John, not Bowers, had signed the release in September 2016 and that John had "zero authority" to settle the wrongful-death claim against Short. Thus, Bowers argued, although there may have been a settlement offer communicated by National General, there was no evidence indicating that Bowers, who was solely authorized to settle the wrongful-death claim against Short at the time, had accepted any such offer. See § 6-5-410, Ala. Code 1975. Moreover, according to Bowers, even if Vocino had the apparent authority to accept such an offer, § 34-3-21, Ala. Code 1975, which addresses an attorney's general authority to bind his or her client, requires a writing, which Bowers insisted was not present in this case.

At the hearing, counsel for Island Medical Alabama, LLC; Island Medical Perseus, LLC; and Island Medical RTR, LLC, which had not sought a dismissal or a summary judgment regarding the claims against them, argued that the release "not only release[d] Terry Short, [but also] … release[d] any and all other persons, firms, or corporations that may be responsible for [Charles's] death, which would include [the malpractice defendants]." At the conclusion of the hearing, the remaining

17

malpractice defendants noted that, if the trial court granted Short's motion, they "would anticipate filing a summary judgment motion on the issue of release."

On March 7, 2023, the trial court entered a summary judgment in favor of all defendants against all plaintiffs. The trial court's judgment provided, in relevant part:

"An attorney employed by the Mike Slocumb Law Firm, Nick Vocino, advised Short and/or his insurer, Integon National Insurance Company,[7] that he was the attorney for, among others, the Estate of Charles Evans, Jr. Pursuant to that representation, a negotiated settlement was reached which included a general release that provided that the Estate of Charles Evans, Jr. would release not only Terry Short, Integon National Insurance Company, but also 'all other persons, firms, corporations … from any and all claims of actions, demands, rights, damages … which [Estate of Charles Evans, Jr.] now has or may [here] after accrue on account of or in any way growing out of any and all known and unknown foreseen and unforeseen bodily and personal injuries and the consequences thereof resulting or to result from the accident, casualty or event which occurred on January 12, 2016 at or near Maplesville, Alabama.'

"The Slocumb Law Firm attorney negotiated for and reached an agreement to settle all claims of the Estate of Charles Evan[s], Jr. and to this end, the lawyer was clearly acting as the agent for the Estate of Charles Evans, Jr. After a review of the briefs submitted and materials filed with the court. There was no limitation on that representation. See

---

[7]See note 5, supra.

18

<u>Malmberg v. America Honda Motor Company, Inc.</u>, 644 So. 2d 888 (Ala. 1994).

"Moreover, the Court considered the affidavit testimony of Robin Lecin, who was the adjuster for the Integon National Insurance Company. Such evidence clearly provides a settlement for all claims that could be brought by the personal representative of Charles Evans Estate was reached for the amount of $15,000.00 with the Slocumb Law Firm. This agreement included a full general release.

"It is clear to the court the Slocumb attorney represented that he was authorized to act on behalf of the Estate of Charles Evans, Jr., deceased, and negotiated a settlement that included execution of a general release. The Court expressly finds and determines pursuant to Rule 54(b), [Ala.] R .Civ. P., that there is no just reason for delay and that final judgment in accordance herewith should be and is entered in favor of Defendants."

Bowers, John, and Linda appeal from the summary judgment in favor of Short and the malpractice defendants.

Standard of Review

"This Court's review of a summary judgment is de novo. <u>Williams v. State Farm Mut. Auto. Ins. Co.</u>, 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; <u>Blue Cross & Blue Shield of Alabama</u>, 899 So. 2d 949, 952-53 (Ala. 2004)."

<u>Dow v. Alabama Democratic Party</u>, 897 So. 2d 1035, 1038 (Ala. 2004).

## Discussion

Although John and Linda are named as appellants, they concede, as they did in the trial court, that they "negotiated and discharged their <u>individual</u> personal injury claims against Short …." Appellants' brief at 1 n.1. Thus, there was no genuine issue of material fact regarding whether John's and Linda's individual claims against Short were barred by the releases each of them signed in their individual capacities, and Short was therefore entitled to a judgment as a matter of law on those claims. See <u>Dow</u>, 897 So. 2d at 1038. Accordingly, we affirm the summary judgment in favor of Short on John's and Linda's individual claims.

Bowers challenges the trial court's judgment for three primary reasons. First, Bowers contends that the trial court erred in entering a summary judgment in favor of the malpractice defendants because Short, and only Short, moved for a summary judgment. Next, Bowers argues that the trial court erred by failing to hold an evidentiary hearing on the enforceability of the release purporting to address the claims relating to Charles. Finally, Bowers asserts that the summary judgment in favor of Short was improper because, he says, under Alabama law, the release

20

was not binding on him. We address Bowers's first two arguments, which are dispositive.

### I. Summary Judgment in Favor of the Malpractice Defendants

Bowers argues, and the malpractice defendants do not contest,[8] that the trial court erroneously entered a summary judgment in favor of the malpractice defendants. Importantly, "Rule 56(c)(2), Ala. R. Civ. P., gives the nonmoving party certain rights to notice and a hearing after a summary-judgment motion has been filed." Moore v. Prudential Residential Servs. Ltd., 849 So. 2d 914, 926 (Ala. 2002). The purpose of this rule is to give the nonmoving party an opportunity to respond to the motion and present evidence in its favor. Id. at 927 (citing Van Knight v. Smoker, 778 So. 2d 801, 805-06 (Ala. 2000)). Thus, "the trial court violates the rights of the nonmoving party if it enters a summary judgment on its own, without any motion having been filed by a party." Id.

---

[8]According to the malpractice defendants, they "agree that, under the majority's holding in [Sampson v. HeartWise Health Sys. Corp., [Ms. SC-2022-0847, May 26, 2023] ____ So. 3d ____ (Ala. 2023)], the judgment in their favor is due to be vacated and the case remanded …." Malpractice defendants' brief at 4.

Here, although the malpractice defendants never moved for a summary judgment, the trial court's judgment nevertheless disposed of all the claims against them. Thus, the trial court deprived Bowers of his right to respond and to present evidence showing that the release purporting to address the claims relating to Charles did not apply to the wrongful-death claims against the malpractice defendants and was not binding against him. See id. For this reason, we conclude that the summary judgment in favor of the malpractice defendants should be reversed. See id.

II.   Summary Judgment in Favor of Short

Bowers next contends that the trial court erred in entering a summary judgment in favor of Short without first holding an evidentiary hearing on whether Vocino was authorized to settle the wrongful-death claim against Short. Short does not address this argument in his response brief. We begin with an overview of the relevant legal principles.

Alabama law provides that, when there is a factual dispute regarding an attorney's authority to settle a claim on behalf of a client, a court should hold an evidentiary hearing on that question. See, e.g., Lem Harris Rainwater Fam. Tr. v. Rainwater, [Ms. 1210106, Sept. 30, 2022]

22

___ So. 3d ___ (Ala. 2022) ("[W]hen a party raises a fact-based defense to enforcement of a settlement agreement, that defense must be resolved in the same way other issues of fact are resolved -- by conducting a hearing at which evidence is received and any witnesses are subject to cross-examination." (citing Claybrook v. Claybrook, 56 So. 3d 652, 658 (Ala. Civ. App. 2010))); J.K. v. UMS-Wright Corp., 7 So. 3d 300, 309 (Ala. 2008) ("[T]he trial court should have held a hearing to determine whether [the client] had authorized [the] attorney to settle the case."). A trial court's failure to conduct an evidentiary hearing is, moreover, a reversible error. See Rainwater, ___ So. 3d at ___; J.K., 7 So. 3d at 309; Benitez v. Beck, 872 So. 2d 844, 847 (Ala. 2003) (reversing a trial court's judgment enforcing a settlement agreement when the plaintiff refuted her attorney's authority to settle the claim and the circuit court "did not hold a hearing and did not hear testimony or receive evidence … [to] ma[k]e a finding of fact" with respect to the attorney's requisite authority).

Under Alabama law, a settlement agreement negotiated by an attorney binds the client only when the attorney acts with "'express, special authority'" from the client or with apparent authority. Mitchum v. Hudgens, 533 So. 2d 194, 199 (Ala. 1988) (plurality opinion) (quoting

Daniel v. Scott, 455 So. 2d 30, 32 (Ala. Civ. App. 1984)).[9] Furthermore, "[a]n agent's apparent authority must be founded upon the conduct of the principal and not upon the conduct of the agent." Daniel, 455 So. 2d at 33. Here, because there was a substantial factual dispute concerning whether Vocino had express or apparent authority to enter into a settlement of the wrongful-death claim against Short, the trial court was required to conduct an evidentiary hearing to resolve that dispute.

As an initial matter, at the time the release addressing the claims relating to Charles was executed in September 2016, Bowers was the only person who could have expressly authorized Vocino to settle the wrongful-death claim against Short. See Ex parte Scoggins, 354 So. 3d 429, 433 n.2 (Ala. 2021). In his response to Short's summary-judgment

---

[9]Bowers asks this Court to hold that § 34-3-21, Ala. Code 1975, which addresses an attorney's general authority to bind his or her client, "does not trump or overrule longstanding Alabama precedent holding that only the personal representative has the authority to settle a wrongful death claim." Appellants' brief at 29 (citing Ex parte Continental Motors, Inc., 270 So. 3d 1148, 1152 (Ala. 2018)). Although this Court has not expressly applied § 34-3-21 to a wrongful-death claim, we see no reason to create an exception to its application here. Alabama's wrongful-death statute, § 6-5-410, Ala. Code 1975, makes the personal representative of an estate the "client" for purposes of § 34-3-21, and an attorney, with the proper authority, has the ability to negotiate and settle claims on behalf of a personal representative.

motion, Bowers asserted that he was "not aware of a settlement." However, in the affidavit he submitted to the trial court, Bowers did not specifically deny giving Vocino authority to settle the wrongful-death claim against Short or assert that he did not approve of any settlement. The parties also never deposed Vocino to determine the scope of his actual authority. During oral argument before the trial court, moreover, counsel for Short acknowledged that Vocino had "perhaps wandered outside of the purviews of [his] representation" but stated that he did not "know anything about that." Accordingly, because the evidence in the record did not establish that Vocino had express authority to settle the wrongful-death claim against Short, whether Bowers granted Vocino "'express, special authority'" remains a factual question to be determined after an evidentiary hearing. Mitchum, 533 So. 2d at 199 (quoting Daniel, 455 So. 2d at 32)).

An evidentiary hearing was similarly required to determine whether Vocino had apparent authority to bind Bowers to any settlement of the wrongful-death claim against Short.

> "'The doctrine of apparent authority does not rest upon what one thinks an agent's authority may be, or what the agent holds out his authority to be; rather, the doctrine of apparent authority is based on the principal's holding the

25

agent out to a third person as having the authority under which he acts.'"

Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389, 394, 281 So. 2d 636, 640 (1973) (quoting Automotive Acceptance Corp. v. Powell, 45 Ala. App. 596, 601, 234 So. 2d 593, 597 (Civ. 1970)) (emphasis added).

In entering a summary judgment in favor of the defendants, the trial court found that "the Slocumb attorney represented that he was authorized to act on behalf of the Estate of Charles Evans, Jr., deceased, and negotiated a settlement that included execution of a general release." In support of that finding, the trial court cited the affidavit of Lecin, who testified that she had "relied on Slocumb Law Firm's conduct and representations in negotiating this full general release for Mr. Short." (Emphasis added).[10] Lecin further testified that Vocino accepted the $15,000 offer and full general release on behalf of the estate, "to [her] understanding, with full authority on behalf of the Administrator." (Emphasis added.) Crucially, however, Lecin did not state that her understanding was based on any representations or conduct on the part

_____

[10]As previously noted, however, the written correspondence from Vocino to Lecin never listed the "Estate of Charles Evans" or Bowers as his client.

26

of <u>Bowers</u>, the principal in this case. Because "[a]n agent's apparent authority must be founded upon the conduct of the principal and not upon the conduct of the agent," <u>Daniel</u>, 455 So. 2d at 33, Lecin's affidavit testimony does not definitively resolve the question whether Vocino had apparent authority to settle the wrongful-death claim against Short.

The other evidence in the record, moreover, also does not establish whether Bowers (1) made any affirmative representations concerning Vocino's authority to settle wrongful-death claim against Short or (2) knowingly permitted Vocino to represent himself as Bowers's agent in negotiating a settlement of that claim. <u>See</u> <u>Johnson</u>, 291 Ala. at 394, 281 So. 2d at 640 (explaining that, to establish apparent authority, a third party must prove that the principal "'"manifested indicia of having cloaked the agent with authority"'" or that the "'principal knowingly permit[ted] an agent to assume'" authority (citations omitted)).

In his response brief, Short contends that National General was entitled to rely on Vocino's authority to settle the wrongful-death claim against Short based on Vocino's filing of a suggestion of Charles's death and a motion to substitute Bowers, in his capacity as the personal representative of Charles's estate, as the proper plaintiff. Short's brief at

28. Short, however, cites no authority for that proposition and does not otherwise explain why Vocino could have made those filings only if Bowers had authorized Vocino to settle the wrongful-death claim against Short. See Brown v. Wheeler, 437 So. 2d 521, 523-24 (Ala. 1983) ("[N]otwithstanding the general rule that an attorney's authority to act on behalf of a client ceases on the death of that client, we adhere to the view that the attorney for a party continues to have a duty to the court after the demise of that client and, in discharge of that duty, must inform the court and other parties of the death.").

Importantly, there is no evidence in the record indicating that Short, who had not yet been named as a defendant in the litigation, knew of Bowers's substitution as plaintiff at the time the release addressing the claims relating to Charles was executed. Further, even if Bowers had authorized Vocino to represent him regarding the claims against the malpractice defendants premised on medical malpractice, that does not amount to evidence indicating that Bowers had authorized Vocino to represent him regarding the wrongful-death claim against Short arising from the car accident. Although Lecin testified in her affidavit that she was provided with a copy of the letters of administration issued by the

Chilton Probate Court, she did not state that she had received a copy of an attorney-representation agreement between Bowers and Vocino or that she had otherwise been presented with proof that Bowers, the newly appointed personal representative, had authorized Vocino to settle the wrongful-death claim against Short. An attorney's filing of a request for a probate court to appoint a county administrator as the personal representative of an estate cannot, by itself, be sufficient to justify an agency relationship based on apparent authority. At that point in the litigation, Bowers had no opportunity to consider, much less manifest, whether the attorney who filed the petition for letters of administration would be the attorney who would represent him in pursuing a wrongful-death claim.

Based on the record before this Court, it is impossible to discern whether Vocino had express or apparent authority to settle the wrongful-death claim against Short, and the trial court was required to conduct an evidentiary hearing to establish the relevant facts. See Benitez, 872 So. 2d at 847-48. Accordingly, the trial court's summary judgment in favor of Short on Bowers's wrongful-death claim against Short is reversed, and the case is remanded to the trial court for it to "conduct[] a hearing at

29

which evidence is received and any witnesses are subject to cross-examination." <u>Rainwater</u>, ____ So. 3d at _____.[11]

Conclusion

The summary judgment in favor of Short is affirmed with respect to John's and Linda's individual claims. The summary judgment in favor of Short and the malpractice defendants on the wrongful-death claims is reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Shaw, Mendheim, Stewart, and Mitchell, JJ., concur.

Sellers, J., concurs in part and concurs in the result, with opinion, which Wise, J., joins.

Bryan, J., concurs in the result.

Parker, C.J., concurs in part and dissents in part, with opinion.

---

[11]Because we reverse the summary judgment in favor of Short on Bowers's wrongful-death claim against Short based on the trial court's failure to hold an evidentiary hearing, and because the lack of an evidentiary hearing renders the record insufficient for us to determine the remaining issues, we pretermit discussion of the other legal argument raised by Bowers on appeal.

SELLERS, Justice (concurring in part and concurring in the result).

In concluding that the trial court was required to conduct an evidentiary hearing on attorney Nicholas Vocino's authority to settle the wrongful-death claim against Terry Short, the majority focuses heavily on the conduct -- or lack thereof -- of Robert L. Bowers, Jr., the personal representative of the estate of Charles Lewis Evans, deceased. This is, says the majority, because traditional tenets of agency law demand that an attorney act with "'express, special authority'" from his or her client to bind the latter to a settlement agreement. Mitchum v. Hudgens, 533 So. 2d 194, 199 (Ala. 1988) (plurality opinion) (quoting Daniel v. Scott, 455 So. 2d 30, 32 (Ala. Civ. App. 1984), citing in turn other cases). In my view, this rationale unduly elevates principles of agency law over the realities of dealings between an attorney and a third party, unnecessarily obligating the third party to obtain proof of actual authority from which the third party may be far removed. See Grace M. Giesel, Enforcement of Settlement Contracts: The Problem of the Attorney Agent, 12 Geo. J. Legal Ethics 543, 567 (1999).

It is well established that "[t]he decision to settle is reserved to the client." Restatement (Third) of the Law Governing Lawyers § 22 cmt. d

(Am. Law. Inst. 2000); cf. Blackwell v. Adams, 467 So. 2d 680, 684 (Ala. 1985) (plurality opinion) ("'An attorney may not consent to a final disposition of his client's case without express authority.'" (quoting Bradford Exch. v. Trein's Exch., 600 F.2d 99, 102 (7th Cir. 1979))). Furthermore, this Court has long held that an attorney, solely as a result of his employment, "is not authorized to compromise the matter of controversy[] or to execute a release of his client's demand." Gullett v. Lewis, 3 Stew. 23, 27 (Ala. 1830). Nevertheless, "'an attorney of record is presumed to have his client's authority to compromise and settle litigation, [and] a judgment entered upon a[] [settlement] agreement by the attorney may be set aside [only upon] affirmative proof that the attorney had no right to consent to its entry ....'" Blackwell, 467 So. 2d at 684-85 (quoting Bradford Exch., 600 F.2d at 102) (emphasis added).

This presumption of authority reflects "a compromise between the practical necessity of according substantial weight to representations made by members of the Bar and the agency rule that attorneys have no implied or apparent power to compromise an action solely by virtue of their employment." Aiken v. National Fire Safety Couns., 36 Del. Ch. 136, 139, 127 A.2d 473, 475-76 (1956). Moreover, use of the presumption

serves three important purposes. First, "[u]se of ... [the] presumption is a recognition that, in the context of settlement agreements, the traditional agency rule would require the third party with whom the attorney is dealing to prove the existence of authority, and that party may be far removed from the proof of actual authority." Giesel, supra, at 567. Second, "[u]se of the presumption is ... recognition of the special status, ethical and fiduciary, of an attorney." Id. at 567-68. Finally, use of "[t]he presumption, of course, ... honors the public policy in favor of settlements and the finality of the judicial process." Id. at 568.

Without any discussion of this presumption, however, the majority reverses the summary judgment in favor of Short on the wrongful-death claim against Short and remands the case to the trial court for an evidentiary hearing, resting its decision entirely on agency canons. The result is correct -- an evidentiary hearing is necessary to establish the relevant facts surrounding Vocino's authority, actual or apparent -- but the majority's reasoning risks complicating the settlement process between attorneys and third parties. Under the majority's rationale, Short will be required at the evidentiary hearing to affirmatively prove that Vocino had the authority to settle the wrongful-death claim against

him. Such a result will surely come as a surprise to Short's insurer, National General Insurance Company, who had little reason to question whether Vocino represented Bowers or had authority to settle on his behalf. And I worry that future third parties will perceive this result as requiring them to ignore representations made by an attorney in favor of communicating directly with the attorney's client, placing them in the awkward position of intruding into the attorney-client relationship and thus needlessly convoluting the settlement process. See id. at 567.

Achieving certainty in resolving cases is important for the efficient administration of justice. We should be careful not to place an unnecessary burden on third parties to double-check, if not triple-check, that the lawyer who sent them a demand letter is truly the lawyer for the client and has authority to bind the client to a settlement. Moreover, we should exercise even greater caution when we risk upending a signed release for which consideration has been provided because we now question whether an attorney was employed by a client and whether that attorney had the authority to settle -- questions that both the attorney and the third party in this case believed to be answered long ago. Accordingly, a third party should be able to rely on a lawyer's

34

representations absent some clear indication of fraud; otherwise, I fear that we place a burden on third parties requiring explicit confirmation of a lawyer's authority.

In an effort to promote this Court's policy of encouraging settlements, see, e.g., Ex parte Adams, [Ms. SC-2023-0423, Oct. 27, 2023] __ So. 3d __, __ (Ala. 2023) (Sellers, J., dissenting), to preserve the sanctity of the attorney-client relationship, and to secure a client's ultimate control over settlement decisions, I would remand this case for an evidentiary hearing, but I would instruct the trial court to apply the presumption that Vocino had the authority to settle on Bowers's behalf. Therefore, only if Bowers can affirmatively disprove Vocino's settlement authority should the trial court deny Short's motion for a summary judgment. This presumption of authority, combined with a shift in the burden of proof, not only ensures that third parties may rely on attorneys' representations of their settlement authority but also protects clients from being bound to any settlement agreements should they affirmatively disprove having bestowed settlement authority upon their attorneys. Accordingly, I concur only in the result to reverse the summary

judgment in favor of Short on the wrongful-death claim against Short and to remand the case. In all other aspects of the majority opinion, I concur.

Wise, J., concurs.

PARKER, Chief Justice (concurring in part and dissenting in part).

I concur with all parts of the main opinion except reversing the summary judgment as to the wrongful-death claims against the parties identified in the main opinion as the malpractice defendants. While I agree that it was reversible error to enter a summary judgment on those claims, I do not think Robert Bowers, Jr., the personal representative of the estate of Charles Lewis Evans, deceased, preserved that error for appeal. See Sampson v. HeartWise Health Sys. Corp., [Ms. SC-2022-0847, May 26, 2023] ____ So. 3d ____, ___ (Ala. 2023) (Parker, C.J., concurring in part and dissenting in part). This Court should not reach the ultimate issue of whether to reverse based on this unasserted-issue error before answering the threshold question of whether it was preserved for appeal via an appropriate motion to alter, amend, or vacate under Rule 59(e), Ala. R. Civ. P. See Bonner v. Mahan, 537 So. 2d 460, 462 (Ala. 1988); Lay v. Destafino, [Ms. 1210383, Feb. 17, 2023] ____ So. 3d ____, ____ (Ala. 2023).

This reasoning does not apply to the reversal of the summary judgment as to the wrongful-death claim against Terry Short, because that error was not unasserted-issue error. Unlike the malpractice

37

defendants, Short moved for a summary judgment, and the trial court heard arguments on his motion. Therefore, the trial court had sufficient notice of its possible error as to this issue before this appeal. See Sampson, ___ So. 3d at ___ (Parker, C.J., concurring in part and dissenting in part).